JOSEPH CUNNINGHAM AND OTHERS, *vs.* NICHOLAS W. SPICK-
LER AND OTHERS.—*December* 1846.

The testator, by one clause of his will, directed his three sons, five years after
his death, to pay his son *M*, and his daughter *E*, the sum of $180, that is
to say $90 to each, and to be paid to them in the following proportions,
viz : Two of his sons to pay two-fifths each, and the third son to pay one-
fifth ; on the *sixth* year, $500 to *P ;* and *seven* years after his death, the
said three sons to pay, as before, to *M* and *E*, the sum of $90 each : and so
on yearly, and every year, until his daughter *P* shall have received $1900.
By a subsequent clause of his will, he directed his three sons to pay to the
children of *E*, at her death, $1000, and the children of *M*, at his death,
the sum of $1500, and the interest on said sum to *M*, during his life, and
to *E*, interest on $1500, during her life, and no longer. HELD, that *M*
and *E*, were each entitled under this will to the interest of $90, men-
tioned in both the said clauses, and that the last legacy was not a *substitute*
for the first.

Where legacies differing essentially, both as to the time, and mode of pay-
ment and amount, are given by different clauses of the same will, to the
same parties, they are accumulative.

The legacies in the first clause were payable alternately, one year to *M* and
*E*, and the next year to *P*, to continue until *P* should receive $1900. By
the subsequent clause, the interest was payable for life only.

APPEAL from the Equity side of *Washington* county court.

The bill in this cause was filed on the 29th January 1844,
by the appellants against the appellees, for the sale of the real
property of which *Samuel Spickler* died seized. The several
defendants answered the bill, and proof was taken; on the 5th
February 1844, the land was decreed to be sold; the sale was
made, reported and ratified. The cause was then referred to
the auditor for a distribution of the proceeds, allowing to the
several parties the proportions thereof to which they are respec-
tively entitled.

The will of *Samuel Spickler*, after devising several matters
to his wife, declared as follows :

"*Item.*—It is my will, that each of my sons, *John*, *Samuel*
and *Jacob*, pay to my wife, as aforesaid, yearly, and every
year, during her life, the sum of *twenty* dollars, and at such
periods as she may require the same; and I bind the lands
hereinafter willed to my sons, as aforesaid, for the full perform-
ances on the part of my sons, for the aforegoing bequests, to
my wife, as aforesaid.

"*Item.*—It is my will, and I do hereby devise and bequeath to my son *John*, the farm on which I now reside, containing, &c., in fee simple, subject, however, to the incumbrances herein devised to my wife, as aforesaid, and to the following charges hereinafter mentioned to my daughter *Polly*, to the children of my daughter, *Elizabeth Sleigh*, and my son *Martin*.

"*Item.*—I give, devise and bequeath, to my son *Samuel*, in fee simple, the farm on which he resides, subject also to the provisions hereinbefore specified for my wife, as aforesaid, and the sums of money hereinafter designated, to be paid to my children and grand-children.

"*Item.*—I give, devise and bequeath, to my son *Jacob*, in fee simple, the farm on which my son *Martin* now resides, and marked on the plat aforesaid as *Martin's*, subject to the provisions hereinafter specified for my wife, as aforesaid, and also for the sums of money, hereinafter designated, to be paid to my said daughter *Polly*, my son *Martin*, and my grand-children. I also give to *Jacob* a bed, a chest, and my clothes.

"*Item.*—It is my will, that each of my sons have free egress and ingress, to and from their respective wood-lands, without hindrance or molestation.

"*Item.*—It is my will, and I do hereby order and direct, that five years after my decease, my sons, *John*, *Samuel* and *Jacob*, pay to my son *Martin*, and my daughter, *Elizabeth Sleigh*, the sum of *one hundred and eighty* dollars, that is *ninety* dollars to each, and to be paid by them in the following proportions, viz: *John* and *Samuel* to pay two-fifths each, and *Jacob* to pay one-fifth; and on the following year, that is to say, six years after my death, my sons, *John*, *Samuel* and *Jacob*, are to pay to my daughter *Polly*, or her heirs, the sum of *five hundred* dollars, *John* and *Samuel* paying two-fifths each, and *Jacob* one-fifth; and on the following year, that is to say, seven years after my decease, my sons, *John*, *Samuel* and *Jacob*, are to pay to *Martin* and *Elizabeth Sleigh*, the sum of *ninety* dollars to each of them, and to be paid by my sons in the same proportion as above, viz: *John* and *Samuel* to pay two-fifths each, and *Jacob* one-fifth, and so on yearly,

and every year, until my daughter *Polly* shall have received the sum of *nineteen hundred* dollars, paying *Polly* alternately, and the interest to *Elizabeth* alternately.

"*Item.*—As it is my design, that my three sons shall pay to the children of my daughter, *Elizabeth Sleigh*, at her death, the sum of *one thousand* dollars, and the children of my son *Martin*, at his death, the sum of *fifteen hundred* dollars, and the interest on said sum to *Martin*, during his life, and to my daughter *Elizabeth*, the interest of *fifteen hundred* dollars, during her life, and no longer. It is therefore my will, that in the event of either or both, my son *Martin* or *Elizabeth Sleigh*, dying before either of the children of my son *Martin*, or my daughter, *Elizabeth Sleigh*, attaining lawful age, that then and in that case, the interest payable yearly to my son *Martin*, be paid for the support of his children, until each becomes of age respectively, when my sons, *John, Samuel* and *Jacob*, are to pay such child, when of age, his or her proper proportion of *fifteen hundred* dollars, and so on as they arrive at lawful age; and in like manner when the children of my daughter, *Elizabeth Sleigh*, arrive at lawful age, respectively, that my sons, as aforesaid, pay to him or her, the proportion that such child will be entitled to out of *one thousand* dollars, which is the sum I design for them, although the interest of *fifteen hundred* dollars is to be paid yearly to their mother, during her life, the same to be paid by my sons in the same proportion as hereinbefore directed.

"*Item.*—As it is not my design to oppress my sons, by the payment of the legacies that may become due to my son *Martin*, and the children of my daughter *Elizabeth;* and whereas it may so happen that all of their children may be of lawful age at the time of the death of my son *Martin*, and daughter *Elizabeth*, when my sons, *John, Samuel* and *Jacob*, would be required to pay the whole amount due to the children of *Martin*, and *Elizabeth.* It is my will, therefore, in such an event, or in the event of more than one being of age at the time of the death of their parent, that my sons pay the oldest of each their proportion, which would fall due to such child, and the next or following year to pay the next oldest, and so

on, until they are paid off, paying interest on the balance unpaid to those who do not receive their proportion.

"*Item.*—It is my will, that my sons, *John, Samuel* and *Jacob,* pay, within five years after my decease, the debt I owe to the widow and heirs of my deceased brother, *Jacob Spickler,* and this will explain the cause why I have prolonged the payments which my sons, *John, Samuel* and *Jacob,* are herein required to make. This debt, and all other debts, which I owe, are to be paid by my sons, as aforesaid, *John, Samuel* and *Jacob,* without abating any thing from the legatees herein named; and all the rest and residue of my estate, both real, personal and mixed, I give and bequeath to my sons, *John, Samuel* and *Jacob.*

"*Item.*—Whereas the proportion of my estate herein willed to my son *John,* exceeds in value that which I have willed to *Samuel* and *Jacob,* it is my will, and I do hereby order and direct, that after all the money shall have been paid off by my sons, to my daughter *Polly,* to my son *Martin,* and to the children of my daughter *Elizabeth,* that then my son *John* pay to my sons, *Samuel* and *Jacob,* the sum of *nine hundred* dollars, to be paid by him, as aforesaid, in three yearly payments, *Samuel* to receive two-thirds, and *Jacob* one-third."

The auditor of the court reported the following accounts, distributing the balance of $3903.75, in the hands of the trustees of this court.

| | |
|---|---:|
| *Elizabeth Spickler,* (widow and devisee of *Samuel Spickler,* dec'd,) for arrearages of sp. charges, due under the will, from Nov. 1st, 1840, to day of sale, March 23rd, 1844, . . . . . . | $121 00 |
| *Elizabeth Spickler,* (widow aforesaid,) to be set apart as a fund, the interest of which is to supply her with said charges during her life, . . . . | 687 33 |
| *Elizabeth Sleigh,* ⅔ of $90, payable every alternate year, from 1843 to 1849, at cash value upon the day of sale, . . . . . . . . . . | 126 22 |

Cunningham and wife, *vs.* Spickler, *et al.*—1846.

*Martin Spickler's* heirs, ⅔ of $90, payable as preceding legacies, at cash value on the day of sale, 126.22, to be divided as follows :—

| | | |
|---|---|---|
| Mary Spickler, (now Mary Martin,) one-third, . . . . . | $42 07⅓ | |
| Elizabeth Spickler, one-third, . | 42 07⅓ | |
| Thomas B. Spickler, one-third, . | 42 07⅓ — 126 22 | |

*Polly Cunningham,* ⅔ of $1900, payable every alternate year, from 1844 to 1850, at cash value upon the day of sale, $643.49. To be divided as follows :—

| | | |
|---|---|---|
| Sarah C. Cunningham, one-third, | 214 49⅔ | |
| Ellen J. Cunningham, one-third, | 214 49⅔ | |
| Mary V. Cunningham, one-third, | 214 49⅔ — 643 49 | |

The children of *Martin Spickler,* ⅔ of $1500, being $600, with int. from September 27th, 1838, to day of sale, March 23rd, 1844, $198; making the sum of $798. To be divided as follows :—

| | | |
|---|---|---|
| Elizabeth Spickler, one-third, . . | 266 00 | |
| Mary Spickler, (now Mary Martin,) one-third, . . . . . | 266 00 | |
| Thomas B. Spickler, one-third, . | 266 00 — 798 00 | |

*Elizabeth Sleigh,* for arrears of int. upon ⅔ of $1500, from death of testator, September 27th, 1838, to the day of sale, March 23rd, 1844, . . .    198 00

The children of *Elizabeth Sleigh,* ⅔ of $1000, payable to them at her death,    400 00

*Elizabeth Sleigh,* to be set apart for her as a fund, which, together with the preceding $600, will yield the sum of $36, ⅔ of $90, the int. of $1500, .    200 00

Balance for distribution, . . .    378 26

    $3678 52

*Samuel Spickler,* ⅔ of $900, payable in
  1850, being at its cash value, $433.31,
  which is entitled to a distributive share,
  amounting to, . . . . . . .        $252 33
*Jacob Spickler,* ⅓ of $900, payable in
  1850, being at its cash value, $216.60,
  which is entitled to a distributive share
  amounting to $125.93, to be divided
  among his heirs at law, as follows :—
    *Samuel Spickler,* one-fifth, . .    $25 18⅗
*Polly Cunningham's* heirs :—
    *Sarah C. Cunningham,* one-third
      of one-fifth, . . . . . .    8 39⅜
    *Ellen J. Cunningham,* one-third
      of one-fifth, . . . . . .    8 39⅜
*Mary V. Cunningham,* one-third of
  one-fifth, . . . . . . . . .    8 39⅜
*Martin Spickler's* heirs :—
    *Elizabeth Spickler,* one-third of
      one-fifth, . . . . . .    8 39⅜
    *Mary S. Spickler,* (now *Mary
      Martin,*) one-third of one-fifth,    8 39⅜
    *Thomas B. Spickler,* one-third of
      one-fifth, . . . . . . .    8 39⅜
    *Elizabeth Sleigh,* one-fifth, . .    25 18⅗
*John Spickler's* heirs :—
    *Joseph Cunningham and wife,* one-
      seventh of one-fifth, . . . .    3 59⅜
    *Nicholas W. Spickler,* one-seventh
      of one-fifth, . . . . . . .    3 59⅜
    *Margaret Spickler,* one-seventh of
      one-fifth, . . . . . . .    3 59⅜
    *Eleanora Spickler,* one-seventh of
      one-fifth, . . . . . . .    3 59⅜
    *Martin Spickler,* one-seventh of
      one-fifth, . . . . . . .    3 59⅜
    *Calvin B. Spickler,* one-seventh of
      one-fifth, . . . . . . .    3 59⅜

| | | |
|---|---|---|
| *Sarah A. Spickler*, one-seventh of one-fifth, . . . . . . . | 3 59¾ | 125 93 |
| | | $378 26 |

The complainants and the infant defendants, excepted to the audit.

1st. Because interest is allowed by it on two-fifths of the legacy of $1500, bequeathed to the children of *Martin Spickler*, from the death of the testator, *Samuel Spickler*, *Sen.*, when such interest should commence from the termination of five years after said death.

2nd. Because it allows arrears of interest on two-fifths of $1500, bequeathed for her benefit, from the death of said testator, *Samuel Spickler*, *Sen.*, when such arrears should commence from the termination of five years after the death of said testator.

3rd. Because *Elizabeth Sleigh* is allowed the sum of $126.22, being two-fifths of $90, payable every alternate year, from 1843 to 1849, at cash value on the day of sale; which in the way stated, as a sum distinct and independent of the interest of $1500, which is allowed her in another part of the account, she is not entitled to receive.

4th. Because the same error occurs in the allowance of the same sum of $126.22, to the heirs of *Martin Spickler*.

5th. Because the will of *Samuel Spickler* evidently intended to give to the heirs of *Martin Spickler*, the interest of $1500, and no more; and to *Elizabeth Sleigh*, the interest of $1500, and no more; and the payment of said interest not to commence until five years after his death; two-fifths of which was charged on *John Spickler;* whereas by said account, said *Martin's* heirs, and *Elizabeth*, are allowed the interest from the time of the death, and are also allowed another charge, each, of $90, every other year; which said *Samuel* did not intend to give.

6th. Because the interest on $1500, to the heirs of *Martin*, and to *Elizabeth*, is allowed, from the time of *Samuel Spickler's* death, whereas it ought to commence five years after his

death, and be paid only every other year, (or every alternate year,) until the said *Samuel's* daughter *Polly* received $1900, as provided for in the will, to wit, in 1849.

On the 16th April 1845, *Washington* county court, (T. BUCHANAN, A. J.,) finally ratified the audit, and both parties appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MARTIN, J.

By J. SPENCER for the appellants, and

By ALEXANDER RANDALL for the appellees.

SPENCE, J., delivered the opinion of this court.

This is an appeal from the equity side of *Washington* county court, overruling exceptions to, and finally ratifying, the account and statement of the auditor.

The subject of review, is the construction of the will of *Samuel Spickler*, and is presented by the eleventh and twelfth clauses of that instrument, which are as follows:

"It is my will, and I do hereby order and direct, that five years after my decease, my sons, *John*, *Samuel* and *Jacob*, pay to my son *Martin*, and my daughter, *Elizabeth Sleigh*, the sum of one hundred and eighty dollars, that is, ninety dollars to each, and to be paid by them in the following proportions, viz: *John* and *Samuel* to pay two-fifths each, and *Jacob* to pay one-fifth; and on the following year, that is to say, six years after my death, my sons, *John*, *Samuel* and *Jacob*, are to pay to my daughter *Polly*, or her heirs, the sum of five hundred dollars, *John* and *Samuel* paying two-fifths, and *Jacob* one-fifth; and on the following year, that is to say, seven years after my decease, my sons, *John* and *Samuel*, and *Jacob*, are to pay *Martin* and *Elizabeth Sleigh*, the sum of ninety dollars to each of them, and to be paid by my sons in the same proportion as above, viz: *John* and *Samuel* to pay two-fifths each, and *Jacob* one-fifth, and so on yearly, and every year, until my daughter *Polly* shall have received the sum of nineteen hundred dollars, paying *Polly* alternately, and the interest to *Elizabeth* alternately."

The twelfth clause is as follows :

"*Item.*—As it is my design, that my three sons shall pay to the children of my daughter, *Elizabeth Sleigh*, at her death, the sum of one thousand dollars, and the children of my son *Martin*, at his death, the sum of fifteen hundred dollars, and the interest on said sum to *Martin*, during his life, and to my daughter *Elizabeth*, interest of fifteen hundred dollars, during her life, and no longer."

The question presented for our decision under these two clauses of *Samuel Spickler's* will is, whether *Martin Spickler* and *Elizabeth Sleigh* took two legacies each, viz: the ninety dollars, payable to each of them five years after the testator's death, as provided by the eleventh clause of testator's will, and the interest on fifteen hundred dollars, given to each of them for life, in the twelfth clause? or whether, the last legacy in the twelfth clause was substituted for the legacy in the eleventh, and they each took but one?

These legacies differ essentially, both as to the terms of payment, and amount to be paid. The legacy by the eleventh clause, or the first payment of that legacy, is to be made five years from the testator's death, and to be paid every alternate year, until the daughter, *Polly*, has received nineteen hundred dollars; that given by the twelfth clause, is to be paid annually from the testator's death, until the death of the legatees.

The counsel for the appellant relied very much upon *C. J. Kent's* opinion, in the case of *Dewitt vs. Yates*, 10 *Johns. Rep.*, 158, but that case differs very widely from this; in the former case, the same sum of money is given twice, in the same instrument, to the same legatee. It is true, the learned judge in that opinion says, "the general rule on this subject, from a review of the numerous cases, appears evidently to be, that where the sum is repeated, in the same writing, the legatee can take only one of the sums bequeathed. The latter sum is held to be a substitution, and they are not taken cumulatively, unless there be some evident intention that they should be so considered."

This case is clearly distinguishable from the one now under consideration; in the former case, the testator, *Peter Yates,* gave to his daughter *Maria's* children, of her body, two hundred and fifty pounds, each of them to have fifty pounds when they come of age, or when they, or each of them, should marry.

In a subsequent part of the will, the testator having devised the half of a farm to his son-in-law, *Philip Vanderbergh,* and his wife, and the other half to his wife, &c., directs as follows: In consideration of which, it is my will, and I do hereby order, "that the said *Philip Vanderbergh,* his heirs, &c., shall pay to the children of my said daughter *Maria,* to wit, *Sarah,* (the wife of the plaintiff,) *John, Maria, Catalina,* and *Catharine,* the sum of two hundred and fifty pounds, equal to six hundred and twenty-five dollars, to be paid unto them, and each of them, in sums of fifty pounds, as they shall respectively arrive at the age of twenty-one years, or on the day that they, or either of them, shall marry." The only material variation in the two bequests is, "that in the latter instance, the legacy was charged upon *Philip Vanderbergh,* in respect to the real estate to him devised."

In the case now under review, *John Spickler,* the testator, by his will, in the eleventh clause, gives to his son *Martin,* and his daughter *Elizabeth,* the sum of one hundred and eighty dollars, to be paid to them five years after his death, and ninety dollars to each of them, seven years after his death; and so on, ninety dollars each, every alternate year, until his daughter *Polly* shall have received nineteen hundred dollars. By the twelfth clause, he gives to *Martin* and *Elizabeth* each, the interest of fifteen hundred dollars annually, from the death of the testator, until the death of the respective legatees. Can it be imagined, that legacies differing so essentially, as to time of payment, mode of payment, and amount to be paid, were intended by the testator to constitute but one legacy to each of these legatees? Or, can it be gravely contended, that this case falls within the rule which *C. Kent* states, has the sanction of the numerous cases referred to in his opinion? *Roper,* in his treatise on legacies, on the authority of *Windham*

*vs. Windham, Finch R.*, 267, and *Curry against Pile,* 2 *Bro. C. C.*, 225, announces it to be law, that "when the legacies given by the same testamentary instrument, to the same person, are of different amounts, the legacy shall be considered accumulative."

*Mr. Justice Aston,* in his opinion in *Hooley vs. Hatton,* reported in a note to the case of *Ridges vs. Robinson and others,* 1 *Bro. Ch. Cas.,* 389, where the Lord Chancellor says, the very able opinion of *Mr. Justice Aston* contains the whole doctrine of the law upon the subject. In that opinion *Mr. J. Aston* asserts, "that the law seems to be, and the authorities only go to prove the legacy not to be double, where it is given for the same cause, in the same act, and *totidem verbis,* or only with small difference." The same judge, in the same case, uses this expression, "as to a larger sum, after a less, *Ricard,* 421, *folio edition,* says, where they are in the same instrument, the two sums are not blended, but the legatee has two legacies, and the heir must show, that the one was intended to be blended with the other, the presumption being in favor of what is written." Decree affirmed without costs, and cause remanded for further proceedings.

DECREE AFFIRMED AND CAUSE REMANDED.