(Decided 21st October, 1880.)

ELIAS D. BRUMBAUGH *vs.* THE STATE OF MARYLAND, use of WILLIAM L. SCHLEIGH.

*Liability of Surety on Trustee's bond—Propriety of ratifying an Auditor's account—Statute of Limitations.*

S. died in 1838, leaving a will by which among other devises and bequests, he devised to his son, J., a farm in fee, but subject to certain charges thereon in favor of other parties. J., the devisee, entered into possession of the farm, and died in 1841, intestate and without issue. Shortly after his death, a bill was filed for the sale of the farm for the purpose of partition. The parties to this proceeding were the heirs-at-law of J., and they included most, but not all, of those in whose favor the charges were made. Among those not made parties were the testator's grandchildren, the children of his daughter, E., to whom he bequeathed $1000, to be paid at their mother's death, and of this sum he required his son, J., to pay one-fifth. E., the mother, who was a sister and one of the heirs-at-law of J., was made a party, but her children were not, and some of them were not then *in esse.* After answers admitting the allegations of the bill, a decree was passed on the 4th of

41                         v. 54.

Brumbaugh *vs.* State, use of Schleigh.

December, 1843, in the usual form, for a sale of the land, appointing B., trustee, to make the sale, requiring him to give bond, &c.; and on the 8th of the same month, the trustee gave bond in the required penalty, with the appellant as one of his sureties. The bond recited the passage of the decree, and contained the usual condition, "that if the above bound," &c. The trustee proceeded to sell, and he sold the land free of all incumbrances. The property sold for $3876.71, and the sale was duly ratified in May, 1844. In November following, the auditor stated an account distributing the proceeds, and made a report, in which he stated that after deducting commissions, expenses and costs, he had distributed the balance, $3644.75, first " to the payment of the legacies and charges upon said estate, created by the will of S., * * * and then the remainder, $1256.25, after satisfaction of said charges to the heirs-at-law of J." The account showed that among the items audited to satisfy these charges, was the following : " To the children of E. one-fifth of $1000, as per will of S., to be paid at her death, $200." The account was finally ratified on the 24th of February, 1845. From the order of ratification no appeal was taken by the heirs-at-law. They received the shares audited to them respectively, making no complaint, and the trustee retained the $200, audited to the children of E., until her death in 1877, a period of more than thirty-two years. E. left four children, and six grandchildren, children of a deceased daughter, who thereupon filed a petition in the equity cause, praying that the trustee be required to bring into the Court the sum of $200, to be distributed to them. An order to that effect was immediately passed, and the auditor stated an account showing the amount due each petitioner. This account was ratified, and the amount thereby found due to the equitable appellee, one of the children of E., was the sum of $41.60. The trustee refused and neglected to pay on demand. On a suit on the trustee's bond brought by the equitable appellee, it was HELD :

1st. That the trustee, according to the exigency of his bond, was bound to bring all the proceeds of sale, which included the $200, into Court, to be distributed under the Court's order, and his surety, the appellant, being bound for the faithful discharge of his duty in this respect, had no valid defence to the claim of the equitable plaintiff, and was responsible therefor.

2nd. That the order of the Court of the 24th of February, 1845, ratifying the auditor's account, was within the jurisdiction of the Court, and was properly passed, it being competent for the Court to allow lienors not made parties to the suit, if they chose so to do,

and with the consent of all other parties in interest, to come in and take satisfaction of their liens out of the proceeds, and with the like consent of all the other parties in interest, to set aside a portion of the proceeds to discharge liens which were not then immediately payable.

3rd. That the Statute of Limitations constituted no bar to the action.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of this Court. The suit was instituted on the 10th of June, 1878, and was submitted to the Court below without the intervention of a jury. The Court, (MOTTER and PEARRE, J.,) being of opinion that upon the facts, admissions and agreements the plaintiff was entitled to recover, rendered judgment in his favor for $44.51. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and IRVING, J.

*Tryon Hughes Edwards* and *A. K. Syester*, for the appellant.

*Alexander Neill*, for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case suit was brought against the surety on a bond given by a trustee appointed under a decree for the sale of real estate, to recover a small sum of money audited to the equitable plaintiff out of the proceeds of sale. The facts necessary to be stated are substantially as follows:

Samuel Spickler died in 1838, leaving a will by which, among other devises and bequests, he devised to his son Jacob, a farm in fee, but subject to certain charges thereon in favor of other parties. The will is set out at length

in the report of the case of *Cunningham and Wife vs. Spickler, et al.*, 4 *Gill*, 280. Jacob Spickler, the devisee, entered into possession of the farm and died in 1841, intestate and without issue. Shortly after his death a bill was filed for the sale of the farm for the purpose of partition. The bill sets out the devise of the farm to Jacob by the will of his father, "subject to certain charges in said will contained," and a copy of the will is made an exhibit, and prayed to be taken as part of the bill. The parties to this proceeding were the heirs at law of the deceased, and they included most but not all of those in whose favor the charges were made. Among those not made parties. were the testator's grandchildren, the children of his. daughter, Elizabeth Schleigh, to whom he bequeathed $1000, to be paid at their mother's death, and of this sum he required his son Jacob to pay one-fifth. The mother, Mrs. Schleigh, who was a sister and one of the heirs at law of Jacob, was made a party, but her children were not, and some of them were not then *in esse.* After answers admitting the allegations of the bill, a decree was passed in the usual form for a sale of the land, appointing David Brumbaugh trustee to make the sale, requiring him to give bond in the penalty of $8000, with approved security "for the faithful discharge of the trust reposed in him by this decree or which may be reposed in him by any future order or decree in the premises," and to *bring the proceeds of sale into Court* to be disposed of under the Court's direction. This decree was passed on the 4th of December, 1843, and on the 8th of the same month the trustee gave bond in the required penalty with the appellant as one of his sureties. The bond recites the passage of the decree and contains the usual condition "that if the above bound David Brumbaugh shall well and faithfully perform the trust reposed in him by this decree, or that may be reposed in him by any future decree or order in the premises, then the above obligation

to be void, otherwise to remain in full force and virtue in law." The trustee then proceeded to sell, and, though the advertisement is not in the record, yet it is manifest from his report that he sold the land free of all incumbrances, and that the purchaser supposed he had acquired an unincumbered title. The property sold for $3876.71, and the sale was duly ratified in May, 1844.

In November following, the auditor stated an account distributing the proceeds, and made a report in which he states that after deducting commissions, expenses and costs, he had distributed the balance ($3644.75,) first " to the payment of the legacies and charges upon said estate created by the will of Samuel Spickler which is an exhibit in this cause, and then the remainder ($1256.25) after satisfaction of said charges to the heirs-at-law of said Jacob Spickler." The account shows that among the items audited to satisfy these charges was the following: "To the children of Elizabeth Schleigh one-fifth of $1000, as per will of Samuel Spickler, to be paid at her death— $200." The account was finally ratified on the 24th of February, 1845. From the order of ratification no appeal was taken by the heirs-at-law, the only parties injured thereby if the distribution was erroneous. They received the shares audited to them respectively, making no complaint, and the trustee retained the $200 audited to the children of Mrs. Schleigh until her death in 1877, a period of more than thirty-two years. She died leaving four children and six grandchildren, children of a deceased daughter, who thereupon filed a petition in the equity cause praying that the trustee be required to bring into Court this sum of $200 to be distributed to them. An order to that effect was immediately passed, and the auditor stated an account showing the amount due each petitioner. This account was ratified, and the amount thereby found due to the equitable plaintiff, who was one of these children, was the sum of $41.60. The trustee refused

and neglected to pay on demand and hence this suit upon his bond.

This statement of the facts is of itself quite sufficient to show that the appellant has no valid defence to the action. The trustee sold the property and acquired possession of the proceeds by reason of this bond, and the $200 now in controversy are *part of these proceeds.* He was bound to bring *all* the proceeds of sale into Court to be distributed under the Court's order, and not to appropriate any part of them to his own use. Such were the express terms of the decree, and the condition of his bond. Without doubt the surety was bound for the faithful discharge of his duty in respect to all the money he thus received. It was of no consequence to the trustee, and no concern of his whether the sale he made passed to the purchaser only the title of the parties to the cause, and left the charges still remaining as liens on the property or not. That was a matter in which the purchaser, the heirs-at-law, and the lienors were alone interested. How then does it lie in the mouth of the trustee or of his surety to say that the original audit of 1845 was all wrong, and that the Court had no jurisdiction to ratify such a distribution of the proceeds of sale? That audit in nowise affected the trustee nor enlarged the obligation of his sureties. The result of sustaining such a defence to this suit, would simply be to allow the trustee, in palpable violation of his trust, to pocket and retain a part of the proceeds for his own use.

But we have no doubt whatever as to the jurisdiction of the Court, and the propriety of its action in ratifying that audit. It may be true that, at the time this sale was made, the lien which these children had under the will of their grandfather was not divested thereby, (*Downin vs. Sprecher*, 35 *Md.*, 474,) and that that lien still exists, and will continue to exist, until discharged by receipt of the money set aside for its payment under this audit. But we do not see how

the continued existence of the lien in favor of and for the benefit of these children can operate so as to allow the trustee to appropriate this money, or how it affects the responsibility of his surety. If the Court found that the trustee had represented and professed to sell the property in fee, free of incumbrances, and that the purchaser, relying on these representations, bought and agreed to give a full price for an unincumbered title, then, upon the report of the sale and the coming in of the proceeds, we think it was clearly competent for the Court to allow lienors not made parties to the suit, if they chose so to do, and, with the consent of all other parties in interest, to come in and take satisfaction of their liens out of the proceeds, and, with the like consent of all the other parties in interest, to set aside a portion of the proceeds to discharge liens which were not then immediately payable. To do this would be but sheer justice to the purchaser, who might have waived his right to object to the sale, and get rid of the purchase upon the assurance that his money would be so applied, and it is substantially what was allowed by this Court to be done in the case of *Holthaus & Ellis vs. Nicholas, et al.*, 41 *Md.*, 241. The audit which thus appropriated the proceeds in discharge of these liens appears to have been made with the consent and acquiescence of all parties, both lienors and heirs-at-law, and no appeal was ever taken from the order ratifying it. The trustee could have discharged himself of the sum set aside for these children, simply by bringing the money into Court, as the decree required him to do; and it was incumbent on the surety to see that this was done if he was anxious to relieve himself from further responsibility on account of its retention by his principal.

Another defence relied on in the Court below is the Statute of Limitations; but that this constitutes no bar to the action is settled by the cases of *Thruston vs. Blackiston*, 36 *Md.*, 501, and *Byrd & Crisfield vs. State, use of Stewart*,

*Guardian of Walter*, 44 *Md.*, 492. We are, therefore, clearly of opinion the appellant is responsible, and has no good defence to the suit.

It follows that the judgment must be affirmed, and it is so ordered.

*Judgment affirmed.*

(Decided 29th October, 1880.)