FRANCIS T. HOLTHAUS *vs.* JOHN SPEAR NICHOLAS, and others. THOMAS ELLIS *vs.* JOHN SPEAR NICHOLAS, and others.

*Effect of the Reversal of an Order of ratification of Sale under a Decree in Equity and of the Auditor's report—Effect of a Decree for a Sale, passed after the cases were Consolidated, on a like Decree passed previously in one of the cases—Practice in Equity in reference to a Sale made under a Decree of the Court—When Purchaser entitled to a Return of the Purchase money advanced, and to an Allowance for Improvements made on the property—Equity Practice; Volunteer.*

On the 17th of October, 1867, N. sold to W. certain lots of ground situated in Baltimore County, and subsequently received part of the purchase money. In February, 1868, W. by a conveyance, in which N. united, assigned a part of this property, and on the 3rd of June, 1869, mortgaged the balance to the Prospect Building Association. On the 5th of November, 1869, the Building Association filed a bill in the Circuit Court for Baltimore County, to procure a sale of this property under their mortgage. On the 16th of May, 1870, N. filed a bill in the same Court for a sale of the same property, to recover the purchase money due and unpaid, making W. and his judgment creditors, and the Building Association, defendants. On the 10th of August, 1870, a decree was passed in the case of the Building Association against W. authorizing a sale of the property and appointing trustees to sell. In pursuance of this decree the trustees sold the property at auction to E. and on the 30th of May, 1871, the sale was finally ratified and confirmed. On the following day the widow of W. filed her petition stating that her husband had died about the 15th of November, 1870, intestate, leaving two infant children, for whom she had been appointed guardian, and asking that after payment of the mortgagee's claim and expenses, the surplus of the proceeds might be paid to her as such guardian. The judgment creditors also claimed to be allowed their judgments out of the proceeds. The cause was referred to the auditor who stated an account applying the proceeds, after payment of costs &c. first, to the payment of

the mortgage; secondly, to the satisfaction of the judgments and the balance to the guardian of the infant children of W. An order *nisi* was passed on the 8th of July, 1871, and on the 14th instant the trustees filed their answer to the petition of the guardian alleging that at the passage of the decree appointing them trustees to sell, the bill of N. to enforce his vendor's lien, was pending; that this lien amounted to more than one-half of the value of the property; and that deeming it their duty to get the best price that could be obtained, and believing it would bring a price totally inadequate to the satisfaction of the claim of the Building Association, if sold subject to the lien of N. they obtained his consent to sell the whole property, with the understanding that his lien should be first .discharged out of the proceeds of sale, and that when the same was paid, he would unite with the trustees in a deed to the purchaser, conveying to him a fee-simple title clear of all incumbrances; . that the property was sold to E. at a price which was fair and reasonable, and that they had informed him that upon the ratification of the sale, he would obtain a deed of the property clear of incumbrances; that they had been informed by N. that unless his claim was paid he would refuse to convey his interest in the property to the purchaser. After sundry intermediate petitions and orders, the auditor made a report assigning to N. the amount of his lien, and the balance after payment of costs &c. to the Building Association in part payment of their claim, excluding the judgment creditors and the heirs-at-law of W. To this account the judgment creditors and the guardian excepted; the exceptions were overruled and the audit finally ratified. The exceptants appealed. On this appeal the orders of the Circuit Court ratifying the sale and the auditor's report were reversed and the cause remanded for further proceedings, upon the ground that W. had died after the passage of the decree and before the sale, intestate, leaving a widow and infant children who were his heirs-at-law, and no suggestion had been made of his death on the record, and no order of the Court had been passed directing the execution of the decree. The Court also suggested that the two cases which were pending at the same time, might have been consolidated and thus have secured a more advantageous sale. After the case was remanded, N. proceeded to amend his bill by making the infant heirs of W. and the executor of one of the judgment creditors, defendants. The answers of the original and additional defendants were filed, commissions issued and returned, and the case of the *Building Association vs. W., et al.* was consolidated with the case of *N. vs. W., et al.* On the 12th of July, 1873, a decree was passed in the latter case authorizing a sale of the property and appointing the same trustees with one other to sell. Pending the proceedings in the case of *N. vs. W., et al.* and prior to the decree of the

Holthaus and Ellis *vs.* Nicholas, *et al.*

12th of July, 1873, petitions were filed by the original trustees and E. and H. to whom E. had sold the property in the case of the *Building Association vs. W., et al.* The trustees stated that their former report was defective in not setting out that they sold the property in fee simple and clear of all incumbrances, and especially of the vendor's lien held by N.; and that they had agreed with him that his lien should be first paid out of the proceeds; and they therefore prayed to be allowed to amend their report. The petition of E. stated that he had paid the whole purchase money to the trustees relying on their assertions made in good faith that the sale was valid and clear of incumbrances; that he had sold the property at an advance to H. contracting to give him a general warranty deed, and had suffered him to go into possession, without the slightest notice by any of the parties to the cause that the sale would ever be disputed. He prayed that the sale might be ratified and a deed in fee-simple made to him by the trustees. The petition of H. alleged that relying upon the announcement made at the sale, and the further assurances of the trustees after the final ratification of the sale, he had erected costly buildings and other improvements, and he prayed that N., the Building Association, E. and the heirs of W., might shew cause why the trustees should not be required to make a deed to him in fee-simple. To this last petition the heirs of W. filed their answer alleging that the matters and things respecting the sale and the report thereon, and the action of the trustees in making the sale had been fully adjudicated and determined by the Circuit Court and the Court of Appeals; that H. bought with full knowledge that the title to the premises was in dispute; that he had cancelled his bargain with E. and received the advance paid by him as part of the purchase money. All the petitions were dismissed by order of the Court on the 12th of July, 1873. Subsequently H. filed another petition, praying that a rule might be laid requiring N., the Building Association, E. and the infant children of W. to shew cause why the decree should not be amended so that the property might be sold subject to the betterments and improvements put upon it by him, &c. This petition was also dismissed. On the appeal of E. and H. it was HELD:

1st. That the sale made and reported by the trustees, was not vacated by the action of the Appellate Court in reversing the order ratifying the sale, and the auditor's report; whatever rights attached in consequence of that act, remained intact until adjudged by a Court of competent jurisdiction.

2nd: That the decree in the case of *N. vs. W., et al.* although subsequent to the consolidation, did not vacate the former decree, or the proceedings thereunder; all were subject to the revision and control of the Court in which they originated, until finally ratified or annulled.

3rd. That the petition of E. should not have been dismissed; if his allegations were established to the satisfaction of the Court, the contract of sale made with him by its agents, the trustees, should be revived; and all the intermediate orders and decrees of the Circuit Court so modified as to authorize the trustees appointed by the decree in the consolidated cases, upon payment of the purchase money to them by E. to convey to him in fee-simple the property in question, free, clear and discharged of all claims of the parties thereto, and those claiming under them. Should the allegations of E. not be sustained, he would be entitled to a return of the purchase money advanced by him, with such interest as might have accrued thereon; and in the event of a sale to such allowances to him or his vendee, for improvements on the property, as the market value had been increased by such improvements, after first satisfying the vendor's lien.

4th. That H. was a stranger to the contract of sale made with the Court by its agents, having no privity with the trustees, and *quoad hoc* a volunteer; he had no right to intervene at that stage of the cause, and his petitions were properly dismissed.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and ALVEY, J.

*John H. Handy* and *I. Nevett Steele,* for the appellant Holthaus.

Was Holthaus in a position to ask relief by petition? He stood in the shoes of the purchaser, and for all purposes of equity is to be so treated. Had Ellis or Holthaus filed a petition after the ratification of the sale, praying the Court to direct the trustees to convey the property to Holthaus as Ellis's vendee, the order would have been passed as of course. Here equity will treat that order as made which they would have sanctioned. Besides under authority, Holthaus, as vendee of Ellis, could proceed

against the vendor. *Crook, et ux. vs. Brown, et al.*, 11 *Md.*, 170.

He was in possession of the land, under the action of the Circuit Court, which was the vendor, had improved it, no one objecting. He could have obtained a deed for it from the trustees at any time after the ratification of the sale, and brought ejectment. Every party to the suit of Nicholas, had recognized his rights by claiming the fund, and were as much surprised when the Court of Appeals set aside the order ratifying the sale, as were Ellis and Holthaus.

The case of *Appold, et al. vs. The Building Association* had been remanded for further proceedings. In that case, by the direct act of all parties to this appeal, Holthaus had acquired an equity. To allow that case to go on without asserting that equity, or to be swallowed up in another suit, was to compromise his rights. He therefore took an early opportunity to set them up in the case itself, which he found consolidated with Col. Nicholas's suit, and to which consolidation as an attempt to escape from the consequence of their own negligence and oversight, he objected.

He had such an equity that after the cause was remanded, had Nicholas brought ejectment, the Court would have enjoined upon a bill filed by Holthaus, to assert his equity against Nicholas. Having such an equity, he was in a position to intervene by reason of his actual interest acquired *pendente lite*, and growing out of the very case itself, and with the assent of every party to the proceedings.

This Court in the case of *Appold vs. Prospect Building Association*, thought the appellant had an interest that ought to be protected so as to give him an "available title."

When the record came back to the Circuit Court, the widow was dead and her rights forever disposed of. There was then really nobody but the children and the purchaser

to be protected. The children are made parties and the purchaser then asks that they being parties may show cause why the sale shall not be ratified under an amended report of sale. The decree being made in the life time of Wilcox, and unappealed from, bound the heirs-at-law of Wilcox. It could only be disputed by appeal taken from it directly. *Schley's Lessee vs. Mayor, &c. of Baltimore,* 29 *Md.,* 34; *McLaughlin vs. Barnum,* 31 *Md.,* 426; *Whiting vs. Bank,* 13 *Peters,* 6.

The heirs, then, had they been made parties after the decree, and before the sale, unless they appealed from the decree, could only object to the fairness of the sale. If, therefore, the only right they could exercise, would be to object to the regularity or fairness of the sale, that objection could not be set up until the sale was made; at all events could as well be made by exception to its ratification—and consequently their rights are as well preserved by making them parties after as before the sale. See *Glenn, Trustee vs. Clapp,* 11 *G. & J.,* 8.

When that case was decided, the *suit abated* by the death of the complainant, and it might be essential if objection were specially made, that the heirs should be made parties. The sale was made in an abated suit. Such however is not the case here. The suit was not abated under the Code, nor is it essential that the heirs should have been made parties. It was proper that the death should have been suggested, but that fact appears to have been known only to those or some of those who are resisting the claim of the appellant.

But even if it were technically necessary, because of the reason alleged, to set aside the sale, as the Court of Appeals is said to have done in 37 *Md.,* yet it is conceded that under the case of *Glenn and Clapp,* the Circuit Court after the setting it aside, and the making the necessary parties, could "at private sale revive the terms of the contract with the same purchaser, if no other objection ex-

isted, and those terms were deemed advantageous to the parties who are thus in Court, prepared to protect their interest in this, as in every other respect."

Ought the Court to have granted the relief prayed? How did the decision in the Court of Appeals affect the rights of the purchaser in possession? It manifestly did not intend to injure him; in terms it says he must be protected. He was in possession under a contract with the Circuit Court, and all that he had done was with the sanction of that Court and the assent of all the parties who claimed an interest in the property or its proceeds. If an error was committed, the Court was equally in error with the parties. The day after the final ratification the Court was informed by the guardian's petition, that Wilcox was dead, and that he had left infant children and a widow, though that widow set up no claim. It was within the term, and the Court had complete control over its own orders and decrees. But it went on to treat the order of ratification as proper, and if the Court itself was misled, it was not surprising that the parties were equally so, especially the purchaser, who had only to look to the unrescinded order of the Court to trace his title. The infants were in Court, and had an opportunity to move to rescind the order of ratification of the sale. They did not do so. They did not choose to object, but rather to affirm. That they were fully possessed of all the facts necessary to make their assertion of right, flows from the evidence that the guardian, their mother, was present at the sale, and that the very day after its final ratification, she claimed for them the surplus proceeds.

If the improvements had been placed on the property by the party in supposed lawful possession, by mistake, every principle of equity required that he should not be damnified. The true measure being to ascertain what was the value of the improvements, and what of the land without them, and award to each party that alone to which, in

justice he was entitled. The *Union Hall Association vs. Morrison*, 39 *Md.*, 281.

It is urged on the other side, that the appellant had full and ample notice that his title was disputed in such way as should have prevented his building on the land, by reason of the pendency of the litigation over the distribution of the proceeds of sale. That he is, therefore, not innocent of all laches.

What notice did the legal proceedings convey to the appellant? The notice he received by these proceedings, was a notice not only that his sale was binding, and that he would be *compelled to keep the title he had bought*, but that, according to the claims of the various parties, no one could assail him without passing to him through a fraud. At the ratification, the purchase money was demanded by the trustees and paid. Had it been refused they could have applied to the Court for a re-sale, and would have obtained it. The purchaser was entitled to a deed from them upon payment of the purchase money, and they were not justified in refusing it by reason of the litigation going on over the proceeds. All of these parties then were estopped from pursuing the course they did in resisting the carrying out of that to which they had all assented.

Nobody can be hurt but the purchaser and his vendee, and all combine against them. Is this equity? Will the Court allow its processes to be used and perverted to such ends? Ought not the Circuit Court to have laid the rules prayed in the petitions? There can be but one answer to this question. It was their duty to protect the purchaser by any means in their power.

It is too late since the recent decision of this Court, to say that a party who voluntarily comes in and claims the proceeds of a sale in a suit to which he had not been made a party, and to which to bind him, it was requisite he should be so made, is not by his act of claiming to be paid out of the proceeds, a party and estopped from pursuing

the property afterwards for his lien in the hands of a purchaser. *Farmers' Bank of Md. vs. Thomas, et al.,* 37 *Md.,* 257, 258.

*John Scott, Jr.,* for the appellant, Ellis.

A Court of Equity has power, after setting aside a sale on formal grounds, to revive the same contract with the same purchaser, and to re-sell the property to him for the same price at a private sale, unless there is some valid and just objections. This has been expressly declared in a leading case. *Glenn vs. Clapp,* 11 *G. & J.,* 8 *and* 9; *Harrison vs. Harrison,* 1 *Md. Ch. Dec.,* 332, &c.

There can be no question of the Court's *power* in this case. The decision formerly rendered and reported in 37 *Md.,* far from being adverse to the present claim of Ellis, seemed to have been framed with a special eye to his rights. The language used on pages 465 and 467, show the purchaser's interest was especially considered, and taken in connection with the Court's knowledge of the established law as enunciated in *Glenn vs. Clapp,* 11 *G. & J.,* 1, before referred to, suggest this very application.

No one's rights will be infringed by a revival of the terms of the contract of sale to Ellis. He paid a fair price for the land, after it had been again and again exposed for sale. He not only bid higher than any one present, without objection or warning from the mother and guardian of the Wilcox children, but *actually paid more than it will now bring.*

What can the Court hope from another sale? Allow Holthaus his improvements, and the land will not bring what the trustees have now in hand.

Out of the proceeds of a re-sale will come first Holthaus's improvements, involving another controversy as to how much they contributed in the sale and the delay and expense of another trial. Then Ellis must be reimbursed not only to the extent of the money paid by him to the

trustees, a part of which has been actually expended to keep this land from being sold for taxes, and in necessary costs, but also under the decisions of this Court and the justice of the case, to the full extent of interest from the time of his payment. *Eichelberger vs. Hawthorn*, 33 *Md.*, 594; *Smith vs. Townshend*, 27 *Md.*, 390.

This interest must be borne by, and will further diminish, the fund. Then the costs of a new sale, fresh advertisements, and double commissions will be deducted. After that, the lien of Nicholas, with its accrued interest, is to be paid, and from the residue is to be satisfied the Building Association mortgage, with added interest, and the different judgments against Wilcox.

Ellis consents that the property shall be sold to himself for the money he has already paid to the trustees, and that Holthaus may be allowed to revive the agreement he has cancelled, and to carry out its provisions as if it had never been impaired. To this, Holthaus agrees, and in that way Ellis unites in himself all the claims of an honest purchaser, who has so far complied with his bargain with this Court, that to revoke it will inflict on him serious and irreparable loss.

If the Court declines to sell this property to Ellis for the price which he has already paid, he asks for a decree for the return of the purchase money with interest from the date of its payment and establishing this claim as a first lien on the proceeds of a re-sale. He claims interest on grounds perfectly settled. This Court has decided that if a trustee sells clear of encumbrances without the assent or knowledge, of the encumbrancer, the purchase money shall first discharge his lien—*Brooke vs. Belt*, 12 *G. & J.*, 319. Under that decision, Ellis had full right to buy on the auctioneer's announcement, without Nicholas being a party to the suit.

Interest has been allowed by this very bench in a case where the purchaser was so negligent as to be guilty of

constructive fraud. Ellis's money has been tied up by conflicting claims, and by an injunction, since last summer. Without any fault on his part, he has been involved in a troublesome and expensive controversy from which he could not withdraw, and has certainly been guilty of no wrong, either in fact or in construction of law. *Eichelberger vs. Hawthorne,* 33 *Md.,* 595 ; *Barnum vs. McLaughlin,* 31 *Md.,* 454 ; *Smith vs. Townshend,* 27 *Md.,* 390.

Should the property be sold to him for the money now held by the trustees, the Court can decree that Holthaus shall return Ellis the sum paid on cancelling the contract, with interest from its repayment, execute the other stipulations of the contract of May, 1871, as to the several amounts there mentioned, with interest from that date, and demand a deed of the property ; or failing in that, the land with its improvements belong to the latter. Ellis is not willing to take it and pay Holthaus for the improvements which were erected to suit the latter's tastes and convenience, and not in accordance with his own views and interests.

*J. T. Ensor, J. S. Nicholas* and *D. C. H. Emory,* for the appellees.

Holthaus has no standing in this Court. He was not a party to the suit, and in his petitions he did not pray to be made a party. *Gregg, et al. vs. Mayor, &c., of Baltimore,* 14 *Md.,* 479. Holthaus, by his release under seal, surrendered all claim, if any he had, and is estopped thereby.

Holthaus had no right to become a party or to intervene in this proceeding, until the proceeds of sale had been brought into Court for distribution. His claim has no merits in a Court of Equity. He was a trespasser upon the property, having dispossessed the widow ; he tore down improvements and put up others to suit his taste and fancy, without regard to what might be the termination of the

suit involving his title, and without regard to the rights of other parties interested in the property. Under such circumstances his claim does not come within the well recognized rules of equity relating to improvements, &c. *McLaughlin vs. Barnum, &c.*, 31 *Md.*, 425.

Bowie, J., delivered the opinion of the Court.

Francis T. Holthaus and Thomas Ellis having severally appealed from the orders of the Court below dismissing their respective petitions in the consolidated cases of John Spear Nicholas vs. Wilcox et al, and "The Prospect Building Association" against the same, both appeals were, by consent, argued by the counsel of each appellant, and the appellee, at April term last, upon the record brought up by the appellant Holthaus, as if both appeals were then in Court.

The record upon the appeal of Ellis, had not then reached this Court, but has been subsequently received and filed as of the present term.

The following opinion, embracing both cases, is therefore entitled and filed as the opinion of the Court in each:

On the 5th of November, 1869, the Prospect Building Association filed their bill in the Circuit Court for Baltimore County, sitting as a Court of Equity, against Andrew J. Wilcox, alleging that in consideration of an advance of the sum of $625, on certain shares of stock by the complainant, the defendant, to secure the payment of the same, had mortgaged certain tracts of land lying in Baltimore county, as appeared by the deed of mortgage therewith exhibited, and having made default in payment thereof, according to the conditions of said deed, the complainant prayed the said lands might be sold, and that the defendant be summoned to answer the premises and abide by the decree, etc.

The defendant having been summoned and having appeared and answered, a commission was issued to take

testimony, which, being returned and filed, a decree was passed on the 10th of August, 1870, authorizing a sale and appointing Messrs. C. B. Slingluff and J. T. McGlone trustees.

On the 16th of May, 1870, John Spear Nicholas filed his bill in the Circuit Court for Baltimore County, sitting in Equity, against Andrew J. Wilcox, the Prospect Building Association, George Appold, and others, and Samuel Kirk, charging among other things, that on or about the 17th of October, 1867, the said Wilcox had agreed to purchase of complainant two lots of ground lying in said county, (as per agreement in writing filed,) therein designated as lots No. 8 and No. 9, for the sum of $9,500, payable in instalments, of which the sum of $5,850 had been paid, leaving still due $3,856 79, with interest, etc.

That since said purchase Wilcox had mortgaged the lots aforesaid to the Prospect Building Association, which claim is subject to the complainant's prior lien, and that said corporation has brought a suit, now pending in that Court, to enforce its mortgage.

The bill further charged that George Appold and others of the City of Baltimore, and Samuel Kirk, of said city, had since recovered judgments against said Wilcox, etc. It prayed that said Wilcox and the Prospect Building Association and subsequent incumbrancers might be made defendants, and that Wilcox be decreed to pay the principal and interest due, and for other relief.

Subpœnas were issued and returned "summoned *Wilcox*," "*non sunt* the rest;" and no further proceedings appear to have been had until 7th June, 1873.

In the meantime the trustees appointed by the decree in the case of the Prospect Building Association vs. Wilcox, proceeded to advertise and sell the lands thereby decreed to be sold, they reported that they had sold the same to Thomas Ellis, the highest bidder therefor, for the sum of $5,872 25, and that said sale was fairly made.

An order of ratification *nisi* having been passed, the sale was finally ratified and confirmed on 30th of May, 1871, no cause to the contrary having been shown, and it appearing that requisite notice had been given.

On the following day, the 31st of May, 1871, Mrs. Jane Ellen Wilcox filed her petition in the last mentioned cause, setting forth "*inter alia*," that the mortgagor, Andrew J. Wilcox, had died intestate, about the 15th November, 1870, leaving two infant children, viz: Julia C. Wilcox and Elizabeth B. Wilcox, of whom the petitioner had been duly appointed guardian ; alleging the sale of the land mortgaged, and that the same had been finally ratified, and praying that after payment of the mortgagee's claim, and expenses, the surplus of the proceeds might be paid to the petitioner, as guardian of the infant children of Andrew J. Wilcox.

Appold and others, and Kirk also filed their petitions, praying to be allowed their judgments out of the proceeds of sale.

The cause was referred to the auditor, who made a report, applying the proceeds, after payment of costs and expenses, 1st, to the payment of the mortgage ; 2ndly, to the satisfaction of the judgments, and the balance to the petitioner, as guardian of the minor children of A. J. Wilcox, deceased.

On which an order of ratification *nisi* was passed on the 8th of July, 1871, unless cause to the contrary be shown within ten days.

On the 14th of July inst., the trustees, Slingluff and McGlone filed their answer to the petition of the guardian, alleging that at the passage of the decree appointing them trustees, Nicholas' bill to enforce his lien as vendor was pending, and Wilcox had but an equitable title to the property ; that Nicholas' lien amounted to about $4,500, the larger part of the value of the property ; that deeming it their duty to get the best price that could be obtained,

and believing it would bring a price totally inadequate to the satisfaction of the claim of the complainant, if sold subject to the lien of Nicholas, they obtained "the sanction and consent of said Nicholas to sell the whole estate, with the agreement and understanding that the lien of the said Nicholas should be first paid out of the proceeds of sale, and that upon payment of his lien, the said Nicholas would join the trustees in a deed to the purchaser, and thereby convey to him a fee simple title, clear of all incumbrances."

That with this understanding, they put up the property at auction, (having several times prior thereto ineffectually tried to sell the same) when the auctioneer, under the order of the trustees, announced the "property would be sold in fee simple, and clear of incumbrances," etc., "that the property was knocked down to Mr. Thomas Ellis, who was present at the announcement of the auctioneer, at $295 per acre : that the price agreed to be paid by Ellis, was a fair and reasonable price for the property, clear of said Nicholas's and all other incumbrances, but was " out of all reason and perfectly exorbitant as a consideration for said property, independent of, and subject to the lien of said Nicholas," that they had informed the purchaser Ellis, that upon the ratification of the sale, he would obtain a deed of the whole property clear of incumbrances; since the filing of the petition to which their answer was filed, the trustees have been informed by Nicholas, that unless his claim is paid, he will refuse to convey his title and interest in the property to the purchaser at said sale.

They therefore submit if the petitioners' prayer is allowed, the loss of $4,500, will fall on the purchaser, etc., and therefore prayed that Nicholas's lien should be first extinguished, etc.

After sundry intermediate petitions and orders not necessary to be noticed, the auditor made a report, assigning

to J. Spear Nicholas $4,892.13, in payment of his lien, and the balance, after payment of costs, commissions, etc., to the Prospect Building Association, in part payment of their mortgage, excluding the other judgment creditors and the heirs-at-law of the mortgagor.

To this report and audit, the judgment creditors Appold and others, and Kirk, and Mrs. Wilcox, as guardian of her wards, excepted; which exceptions, being overruled, and the audit finally ratified by the Court on the 20th June, 1872, the exceptants prayed an appeal to this Court.

Upon this appeal of *Appold and others vs. The Prospect Building Association, et al.*, (decided by this Court, at October Term, 1872, reported in 37 *Md.*, 458 *to* 467,) the orders of the Circuit Court for Baltimore County in equity, ratifying the sale and the auditor's report, were reversed, and the cause remanded for further proceedings upon the ground that Andrew J. Wilcox the defendant in that cause, had departed this life after the passage of the decree, and before the sale, intestate, leaving a widow and infant children, who were his heirs-at-law, and no suggestion had been made of his death, on the record, to enable the Court to take such action, if any was deemed necessary, and no order of the Court, directing the execution of the decree having been passed, the sale and ratification thereof, was irregular and improvident.

This Court also said, "It further appears, that at the time of the decree aforesaid, John Spear Nicholas 'had filed a bill in the same Court for the sale of the same property, to enforce a lien held by him as vendor, not having parted with the legal title, and that the defendant, held but the equitable interest in the same. These cases, both pending in the same Court, for the sale of the property, might have been consolidated, so that by the action of the Court, in the exercise of its immediate authority, without the intervention of the trustees, the property might have

been sent into the market for public sale, disencumbered of both the legal and equitable claims of Nicholas, and the defendant respectively, and thus command a fair price, and the purchaser be enabled to acquire a valid title to the property disencumbered of such liens."

After the case of *Appold and Others vs. The Prospect Building Association,* had been remanded, (Mrs. Wilcox, widow of Andrew J. Wilcox having died in the meantime) John S. Nicholas, proceeded to amend his bill, by making the infant heirs of A. J. Wilcox, and the executor of Kirk, defendants.

The answers of the original and additional defendants were filed; commissions issued and returned, and the case of the *Prospect Building Association vs. Andrew J. Wilcox and Others,* was consolidated with the case of *Nicholas vs. Wilcox, et al.* On the 12th of July, 1873, a decree was passed in the latter case, authorizing a sale of the lands in the proceedings mentioned, and appointing John T. Ensor, C. Bohn Slingluff, and D. C. H. Emory, trustees to execute the same.

Pending the proceedings in the case of *Nicholas against Wilcox and Others,* and prior to the decree therein above mentioned, petitions were filed by Messrs. McGlone and Slingluff, trustees, Thomas Ellis, and Francis T. Holthaus, respectively, in the case of *The Prospect Building Association against Andrew J. Wilcox and Others.*

The trustees state that their former report, made on the 26th of April, 1871 was defective, in not setting out that they sold the property in fee-simple, and clear of all incumbrances, and especially, of the vendor's lien held by John Spear Nicholas upon the same, and in not being sufficiently full and explicit as to the proceedings therein.

Recapitulating substantially their answer to the petition of Mrs. Wilcox, before recited, they further aver that having twice attempted to sell the property without success,

because as they believe of the lien held by Nicholas for the purchase money, and the title of the defendant, was only an equitable one, and because it was supposed by the public, they could not sell clear of the vendor's lien, and convey the legal title, they *sought* and *obtained the consent of Nicholas, to sell the whole estate, clear of his incumbrance with the agreement and understanding, that his lien should first be paid out of the proceeds of sale, upon the payment of which, Nicholas agreed to join with the trustees in a conveyance in fee simple to the purchaser*.

Under said agreement they again advertised the property; and at the sale, before the bidding commenced, announced by their auctioneer, that the property would be sold in fee simple, and clear of all incumbrances, which announcement was made in the presence and hearing of Thomas Ellis, the purchaser; that when they made their report, they did not deem it necessary to set out the above facts, being of the opinion, that no valid objection could be made to the same, inasmuch as the only parties interested in the proceeds of said sale, were satisfied therewith.

That since the final ratification of said sale by this Court, objections have been made to the distribution of the proceeds thereof, first to extinguish said vendor's lien, on the ground that your petitioners sold only the rights of Andrew J. Wilcox; and the vendor's lien is still a burden upon said property, notwithstanding the proceeds of sale were sufficient to pay the lien and costs, and leave a surplus to be distributed to the complainant. For which reasons, and because the purchaser and those claiming under him by reason of the sale and the ratification thereof, have entered into possession of the property, and expended large sums of money, amounting to ten thousand dollars (as they are informed,) in buildings and improvements, and irreparable damage will be done the purchaser, and his alienee, if the sale is not sustained, and said vendor's lien

is not paid out of the proceeds of said sale, said report ought to be amended.

The petition of Ellis, after recapitulating many of the foregoing allegations as to the sale of the property, free from all incumbrances, and his purchase thereof, and the ratification of said sale, states that the petitioner was enabled shortly after, by giving a long credit extending over four years, and engaging to procure a deed within three months, to contract for the sale thereof, to one Francis Holthaus, for an advance of one thousand dollars.

That no objection being made to the sale or its ratification, he was not called upon to assert his rights before the decree of the Court of Appeals ; on the contrary, he paid over the whole purchase money to the trustees, relying *on their assertions made in good faith*, that *the sale was valid and clear of incumbrances ;* he contracted to give Holthaus a general warranty deed within three months, in consideration of the advance made by him, and suffered him to go into possession of the land, paid the purchase money, without the slightest notice by any of the parties to the cause, that the sale would ever be disputed—that the property was sold for a fair price, equivalent to the fee-simple value of the land.

After charging that Holthaus has rescinded his contract with him, that he is the *bona fide* purchaser of the land ; that the widow of Wilcox had died, and that his children and creditors are parties to the suit, and the case can be consolidated and a sale made to the petitioner, in accordance with the engagements heretofore made by the officers of the Court, he refers to the amended report of the trustees, as stated in their petition in support of his statements. He alleges that Wilcox left no personal estate of any value, and was deeply in debt ; that the proceedings taken by John Spear Nicholas and others, were without notice to the petitioner, and he prays the same may be annulled ; that proper parties be made in the cause, and

the sale made to him may be ratified, and a deed in fee simple made to him by the trustees, in accordance with his contract with them, clear of all claims, etc.

This petition being dismissed, the petitioner appealed.

The petition of Holthaus having alleged the several matters and things stated in the preceding petitions, prior to the period of his purchase, further charges that relying upon said announcement at said sale, and the further assurance of the trustees, after the final ratification of the sale, he proceeded to erect expensive and costly buildings and other improvements, for the permanent dwelling for himself and family, and finished the same before any appeal was prayed, and laid out ten thousand dollars, in perfect good faith, supposing his title to be good, and in due time would be perfected; that he was then residing on the premises, and if the Court should order a re-sale, he would be greatly damaged.

He charges that Nicholas, Wilcox's heirs, and all the other parties in interest, were before the auditor, and their respective claims were considered and adjudged by the Circuit Court, in ratifying the auditor's second report; after other allegations, not material to the questions before us, he prayed that Nicholas, the Prospect Building Association, the heirs of Wilcox, and Ellis, might be ruled to show cause why the amended report of the trustees should not be ratified and the trustees required to make a deed in fee simple to the petitioner. Or if the Court should think the sale irregular, that they should order the trustees to sell the property at private sale to the petitioner for the same price they sold to Ellis at public sale, and for other and further relief.

The infant heirs of Wilcox, by their guardian, answered the petition of Holthaus, alleging that all the matters and things therein stated, respecting the sale therein mentioned, and the report thereon, and the action of the trustees in making the sale, have been fully adjudicated and deter-

mined by the Circuit Court, and the Court of Appeals, as will appear by the proceedings in the cause and the opinion of the Court of Appeals. 2ndly. That Holthaus had unlawfully and forcibly obtained possession of the premises. 3rdly. That he bought with full knowledge that the title to the premises was in dispute. 4thly. That he had cancelled his bargain with Ellis, and received the advance paid by him as part of the purchase money.

5thly. That he made his expenditures in defiance of law, and in violation of the rights of the widow and children.

All these petitions were dismissed by order of the Circuit Court, passed on the 12th July, 1873. After the decree had been passed in the case of John Spear Nicholas *vs.* Andrew J. Wilcox, Francis T. Holthaus filed another petition, re-affirming the facts set forth in his former petition filed in the case of The Prospect Building Association, against Wilcox, *et al.*, and praying the Circuit Court to lay a rule on John Spear Nicholas, The Prospect Building Association, Julia and Elizabeth Wilcox, infant children of A. J. Wilcox, and Thomas Ellis, to show cause why said decree should not be amended, so as to command the sale of the property therein decreed to be sold, subject to the betterments, and improvements, put upon the same by the petitioner, subsequent to the final ratification of said sale, made and reported by Slingluff and McGlone, trustees in the case of The Prospect Building Association *vs.* Wilcox, and prior to the appeal to the Court of Appeals, from the final ratification of the auditor's report; or that they may show cause why said property may not be sold free, clear, and discharged from the equities of this petitioner, and an account taken of the betterments and improvements, on the same, by the petitioner, and the petitioner paid out of the proceeds of said sale, the full amount of said betterments and improvements.

Which petition also, was afterwards on the 9th of August, 1873, dismissed.

The petitioner thereupon on the same day prayed an appeal from the several preceding orders, viz:

1st. The order of the 7th June, 1873, consolidating the case of the Prospect Building Association *vs.* Andrew J. Wilcox, with the case of John Spear Nicholas *vs.* Andrew J. Wilcox, *et al.*

2nd. The orders of the 12th of July, 1873, dismissing the petitions of Slingluff & McGlone, trustees, the order dismissing the petition of Holthaus & Ellis, praying the rescission of the order of consolidation.

3rd. From the decree for the sale of the property of the 12th of July, 1873.

4th. The order dismissing the petition of Holthaus to amend the decree.

This case is now before us on the several appeals of Ellis, and Holthaus, which must be considered separately.

Whatever may have fallen from this Court, in their opinion upon the former appeal, must be considered in the light of the circumstances then before them, and is only binding upon the parties to that appeal. Some of the facts on which Ellis's claims rest, were presented by the trustees' answer to the petition of the guardian of the infant children of A. J. Wilcox, in the record on the appeal of the exceptants to the auditor's report; but Ellis was not represented by counsel, the ratification of the sale was not directly involved; on the contrary, its validity was assumed, by the immediate subject in controversy,— the distribution of the proceeds—since there could be no distribution, unless the sale was confirmed, and it was upon the presumption, that his title would be defective, as much as any other consideration, that the ratification of the sale (from which there was no appeal by any of the parties,) as well as that of the auditor's report, was rescinded, and the cause remanded for further proceedings in conformity with the opinion of the Court.

The causes being consolidated, and all parties in interest united, the equities of all are now before this Court as fully as if they were originally combined in one suit.

The object of this Court, in remanding the cause of Appold *vs.* The Prospect Building Association, and suggesting a consolidation; was to protect the rights of all concerned; none of those rights were prejudged, or prejudiced by such action. All that had been done, except the orders particularly reversed, remained "*in fieri.*"

Assuming then the facts alleged in the petition of Ellis, to be established by competent proof, it was within the acknowledged power of the Circuit Court, to recognize the sale made by their trustees in the first case, and to direct them to pay the fund into Court, to the credit of the causes as consolidated; which being done, the Court might modify their former decree in the consolidated cause, disaffirm the sale made thereunder (if any,) and require the trustees appointed in the consolidated cause, to convey the right, title, and interest of *all* the parties thereto, to the first purchaser, in fee, free from all incumbrances.

The sale made by the trustees, Slingluff and McGlone, was not void, or vacated by the action of this Court, on the appeal of Appold, *et al.* Whatever rights attached in consequence of that act, remained intact, until adjudged by a Court of competent jurisdiction.

The decree in the case of Nicholas *vs.* Wilcox, and others, although subsequent to the consolidation, did not vacate the former decree or the proceedings thereunder; all were subject to the revision and control of the Court in which they originated, until finally ratified or annulled.

The case of *Glenn vs. Clapp*, 11 *G. & J.*, 1, 10, cited by the appellants, is analagous in several respects to that before us, and sustains the views assumed by the appellant Ellis's counsel.

The bill in that case, was filed by prior mortgagees, against the mortgagor and a subsequent mortgagee and

incumbrancers. The complainants died after the decree to sell, notwithstanding which the trustee proceeded to sell; the mortgagor became an insolvent debtor, before the ratification. His trustee filed objections to the sale on three grounds: 1st. That the cause abated by reason of the death of the complainants, and the insolvency of the mortgagor, one of the defendants ; 2ndly, that a bill was pending at the time of the sale, to set aside the decree, and the deed under which it was made; 3rdly, inadequacy of price.

After declaring the causes which would abate, a suit in equity, and the right of either party to revive, among other reasons for suspending the further proceedings, the Court said, that great injustice would result by permitting the rights of absent and ignorant claimants to be finally decided by the evidence of other interested persons, wherefore rules have been adopted regulating the abatement of causes, and requiring proper parties to be brought before the Court. "The first principles of justice demand that, before the Court shall finally and conclusively adjudicate upon the rights of the representatives of a deceased party, an opportunity shall be afforded them to vindicate those rights, quite as much as they demand, that all other persons shall have the opportunity to defend their property before its title is decided upon by the Court."

Having determined that the representatives of the first mortgagees, should have an opportunity to contest the payment of their mortgage debt, and *the subsequent* orders must be reversed, the Court further decided, "The making of new parties will necessarily bring before the Court, the questions affecting the sale, and whether it must be set aside, either on account of the previous abatement of the suit by the death of the complainants, or for the reasons alleged in the exceptions first filed." As to the effect of abatement, they said, "We think the abatement of the suit before the sale, where that circumstance is relied on as an exception, and made before final ratification,

is a sufficient reason for setting aside the sale.    But it is to be considered that the true character of such a sale is, that it is a transaction between the Court, and the purchaser; that a private sale may be made as well as a public sale, if the Court deem it advantageous, and that after setting aside the sale as formally irregular, the Court might revive the terms of the contract, with the same purchaser, if no other objections existed, and those terms were deemed advantageous to the parties who are thus in Court, prepared to protect their interests in this, as in every other respect."

Although the abatement of the suit, before the sale, was relied on as an objection *to its ratification* in the case above cited, yet this Court did not pronounce the sale void, but regarded it as a circumstance to be considered in connection with others, when all the parties in interest should be brought before the proper tribunal, which might if it should be deemed equitable and advantageous, revive the contract with the same purchaser, and ratify and confirm it.    In the present case, no suggestion of the death of Wilcox was made before the sale was ratified, or any other objection to the sale; all parties then before the Court acquiesced in it, and regarding it as valid, contended for the distribution of the proceeds.

This Court, in its opinion on the former appeal, does not declare the sale to be inoperative and void, but speaks of it as "irregular and improvident," because there had been no suggestion of the death of the defendant, and no order of the Court directing the execution of the decree.    No question affecting the "*bona fides*" or equity of the sale, was involved.    Referring to the pendency of Nicholas' bill for the sale of the same property, to satisfy the vendor's lien, it is suggested, that the cases "*might have been consolidated*" and the property *sent into* the market for public sale, etc., and the purchaser enabled to acquire a valid title to the property disencumbered of all liens.    This

language does not mean, or necessarily imply, that under all circumstances, that course must be pursued, or should be pursued, but as the potential mood indicates, it was possible, and proper.

It follows from what we have said, that in our opinion, the petition of Ellis should not have been dismissed.

If his allegations are established to the satisfaction of the Court, the contract of sale made with him by its agents, the trustees, should be revived; and all the intermediate orders and decrees of the Court below so modified, as to authorize the trustees appointed by the decree in the consolidated cases, upon payment of the purchase money to them by Ellis, to convey to him in fee simple, the property described in the proceedings in the cause, free, clear, and discharged of all claims of the parties thereto and those claiming under them. Should Ellis's allegations not be sustained, he would be entitled to a return of the purchase money advanced by him with such interest as may have accrued thereon, and in the event of a sale, to such allowances to him or his vendee for improvements on the property, as its market value has been increased by said improvements after first satisfying the vendor's lien.

Holthaus and Ellis, having by their counsel, entered into an agreement filed in this cause, whereby their several rights and interests are, or may be adjusted, it is unnecessary for this Court, to inquire as between them, what were their respective rights. Being a sub-purchaser from Ellis, "*pendente lite,*" Holthaus' rights were entirely dependent on those of Ellis.

The latter, as a party to a contract made with the Court by its agents, had necessarily a right to be made a party, and pray for relief, or appeal from any action of the Court, prejudicial to him; but the former was a stranger to the contract, having no priority with the trustees, and "*quoad hoc*" a volunteer. The bond of conveyance from Ellis to Holthaus shows he purchased before the sale to Ellis was

ratified, with notice of such facts, as were sufficient to put him upon inquiry, and the condition, "that in case said Ellis shall not be able to convey said property within three months" from its date, the cash payment of $1000, with interest should be returned, etc., and "the obligation to be void" denotes that as a purchaser, the obligee was aware the title was in suspense.

To permit persons claiming under such circumstances to intervene in a controversy previously commenced, might protract litigation indefinitely, and subject the original parties, to irreparable loss.

The general principles expressed by the Court below, in the case of *Gregg vs. The Mayor, &c. of Balto.*, 14 *Md.*, 479, affirmed by this Court, we think correctly define the law as to parties.

The appellant Holthaus, having no right to intervene at this stage of the cause, it is unnecessary to inquire further into the questions proposed to be raised on his appeal in this case; if hereafter it should be necessary, in consequence of a resale, to inquire into his interest in the improvements, he may intervene, and his equities in that respect, be considered and determined.

The orders of the Court below, dismissing the petitions of Holthaus, will be affirmed; that dismissing the petition of Ellis, will be reversed.

*Orders dismissing the petitions of
Holthaus affirmed, order dismissing
the petition of Ellis, reversed.*

(Decided 17th December, 1874.)

STEWART, J., dissented.