(Decided 14th March, 1893.)

---

REBECCA WAGONER, by her next friend, JOHN E. LITTLE *vs.* ELIJAH WAGONER.

*Husband and Wife—Bill for Separate maintenance—Inter- ference with Wife's property—Injunction—Amended bill —Dismissal—Effect.*

On a bill by a wife against her husband praying for a separate maintenance out of the rents and profits of certain real estate, and for an injunction to restrain the defendant from collecting such as might be set apart for her, and also from interfering with the property, until the final hearing of the case, an injunc- tion was ordered and the writ was issued.   Pending a motion to dissolve the injunction, after answer by the defendant, the plain- tiff, leave first being obtained from the Court, filed an amended and supplemental bill, containing substantially the same aver- ments as the original, and praying for the same relief as therein asked for.   The Court thereupon passed an order refusing the injunction prayed for by the amended bill.   After the taking of much testimony the Court finally decreed that the order "refusing the injunction prayed for by the amended bill * * * be, and the same is hereby, made perpetual," and that the "bill of the complainant is hereby dismissed."  HELD:

That such decree was, in effect, a refusal to continue the injunction previously granted, and it was no longer in force.

Even if it could be considered that the amended bill was not the entire complaint of the plaintiff, and could be taken as an amendment only, which, together with the original bill, formed

the basis of her action, the final decree dismissing the bill *ipso facto* dissolved the injunction, inasmuch as amendments to a bill are always considered as forming a part of the original bill.

On a bill by a wife for separate maintenance, she is not entitled to an injunction to restrain her husband from interfering with property acquired by her by purchase since the adoption of the Code of 1860, it not being clearly alleged that the defendant had made any effort to collect the rents therefrom, nor charged that the plaintiff was in danger of irreparable injury as a consequence of any act of the defendant.

APPEAL from the Circuit Court for Carroll County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and BRISCOE, J.

*William P. Maulsby,* for the appellant.

*James A. C. Bond,* for the appellee.

PAGE, J., delivered the opinion of the Court.

The appellant, Rebecca Wagoner, by her next friend, filed her bill against her husband, Elijah Wagoner, praying for a separate maintenance and support for herself and daughter, out of the rents and profits of certain real estate mentioned therein, and also for an injunction to restrain him from collecting such, as might be set apart for her, and also from interfering with the property until the final hearing of the case. Upon the filing of this bill, the Court, on the thirtieth of March, 1885, ordered the injunction, and the writ was accordingly issued on the following day. The defendant answered the bill on the thirtieth day of September following, and moved to dissolve the injunction. While this motion

Wagoner *vs.* Wagoner.

was pending, the complainant, having first obtained leave from the Court, filed an amended and supplemental bill. This amended bill contained substantially the same averments as the original bill, and prayed for the same relief, except that the maintenance was asked only for herself, the daughter having married, and gone from her home, since the original bill was filed.

The charges of the amended bill, briefly stated, are as follows: That she was married to the defendant in the year 1846, and lived with him until 1876; that three children were born of the marriage, who now survive, all of whom now reside apart from her; that she inherited from her father, who died in the year 1852, certain real estate, described in the bill, and was entitled from his estate to certain funds, which passed into the hands of her husband, of which only a small part now remains; that up to the year 1878, he received all the rents and profits of the said real estate, and provided for the support and maintenance of his family; that in May, 1879, he became an insolvent, and since then has been possessed of no property, except some personal property of small value; that he ceased to provide for his family during the year 1878, and from May, 1879, has contributed nothing for their maintenance, and from that period has abandoned all care and management of said real estate, so that she was compelled to assume the management of it, rent it in her own name, and herself receive the rents and profits thereof; that, in addition to that which she inherited from her father, she acquired by purchase in 1878 from Mr. McKellip, and now owns, two small lots in Westminster, the net income from which is about $65; that she has no other means of support than the income from these several parcels of real estate, inherited from her father and purchased from Mr. McKellip; that the defendant is addicted to the excessive use of ardent spirits, which renders him incompetent to transact busi-

ness, and causes him to be personally offensive; that but for the habit of excessive drinking, he would be capable of earning a decent livelihood for himself and family; that the amount of State, county and city taxes is annually about $134; that "on a few occasions in and after the year 1882, the defendant has sought to interfere with the payment of rents to your oratrix," and "has recently demanded of some of the persons to whom she had rented parts of the property aforesaid, payments to him of said rents, and she charges that he will, unless restrained, *seek* to recover and receive all the said rents and profits and appropriate the same to his own use;" and that she has reason to believe, and does believe, that if he succeeds in securing possession of the said rents, he will not pay the taxes annually accruing, nor apply them to the needs of herself, so that she will be entirely deprived of all her means of livelihood.

The prayer of the bill is, "that out of the rents, &c., arising from the said property and bank stock, before mentioned, and intrusted and acquired by her, as aforesaid, a suitable and sufficient provision for the support and maintenance of your oratrix, may, by the decree of your Honors, be made and secured to her, and that the defendant may be enjoined and restrained from, in any wise interfering with the same, and from collecting and interfering with the said rents, issues and profits arising from said property and bank stock, as aforesaid, until the final hearing, or until the further order or decree * * * in the premises." On the 19th day of August, 1887, the Court passed an order refusing the injunction prayed for by the amended bill. Subsequently to the passage of this order, the defendant filed his answer, in which after denying many of the averments of the bill, he admits he has demanded, *as of right*, the rents and profits of the property inherited by his wife from her father in 1852, but alleges he has no wish or purpose to divert

Wagoner *vs.* Wagoner.

them from the support of the complainant. He also denies the jurisdiction of the Court to interfere with him in the management and control of that property; and by the concluding paragraph pleads in bar of this proceeding, a former cause between himself and the complainant, being No. 2171 of the Equity Docket of the Circuit Court for Carroll County. After many delays and the taking of much testimony, the Court, on the twenty-fifth day of July, 1892, finally decreed, that the order of the Court, "refusing the injunction prayed for by *the amended bill,* * * * be and the same is hereby made perpetual," and that the "bill of the complainant is hereby dismissed."

It was contended at the argument, that notwithstanding the order of the Court refusing the injunction asked for in the amended bill, and the final decree making that refusal permanent, and dismissing the bill, the injunction granted upon the original bill is still continuing. But we cannot assent to this. The amendment to the bill in this case, was made, not by filing a paper containing only such averments as were amendatory; but by an entirely new bill, complete in all its parts, containing substantially the same averments and praying for the same relief as the original bill. It was clearly intended by the complainant, and understood by the Court as a substitute for the original complaint. In her petition praying leave to amend, the complainant states "that she has embodied said amendments and supplementary statements in a paper or *bill of complaint* herewith shown * * * and prays leave to file" the same "for an amended and supplemental bill of complaint in said cause ;" and the Court thereupon ordered that "the same be taken and received as an *amended* and supplemental bill." The order therefore passed upon this bill was in effect a refusal to continue the injunction previously granted. Even if it could be considered, that the

amended bill, was not the entire complaint of the appellant, and could be taken as only an amendment, which, together with the original bill formed the basis of her action, yet inasmuch as the Court by its final decree dismissed the bill, it cannot be contended that the injunction first granted still continues. Amendments to a bill are always considered as forming a part of the original bill. 1 *Dan. Ch. Pr.*, 407, *note; Walsh vs. Smyth,* 3 *Bland,* 9-20; and a dismissal of the bill *ipso facto* dissolves the injunction. 2 *Dan. Ch. Pr.*, 1675; *Green vs. Pulsford,* 2 *Beaven,* 70-75; *High on Injunctions, sec.* ˙1476.

We do not deem it necessary to advert to the testimony contained in the record, nor to the many objections to the proceedings raised by the solicitor for the appellant at the argument, for the reason that upon the allegations of the bill the Court had no jurisdiction to grant the relief prayed for.

The bill prays for a separate maintenance out of property mentioned therein. This property it is stated, consists of that which the complainant acquired by the death of her father in 1852, and that which was purchased by her in 1878 from Mr. McKellip. The injunction is also asked, not only to restrain the defendant from interfering with such property as may be set apart for her maintenance, but also with any of the property until the final hearing. It is difficult to conceive, upon what theory, it can be claimed, that the averments of the bill are sufficient to justify a Court in allowing an injunction as to the property acquired from Mr. McKellip. It is not clearly alleged, that the defendant has made any effort to collect the rents from this property, nor is it charged, that she is in danger of irreparable injury as a consequence of any act of his. Having been acquired by purchase since the adoption of the Code of 1861, she holds it as if she were a *féme sole*, and it can therefore not be subjected to a decree for a separate

maintenance in a suit against her husband.   *Hall vs. Hall,* 4 *Md. Ch. Dec.,* 283; *Sec.* 2 *of Art.* 45 *of the Code.*

The vague charge that the defendant has recently demanded of *some* of the persons to whom she had rented *parts* of the property, payment to himself, even if it could be held to refer to these lots, would be, as a foundation for the action of the Court, far from sufficient to entitle the complainant "to this high and extraordinary power of a Court of equity." The only mode of obtaining an injunction is by a bill, which shall state a case of plain right, in probable danger of being irreparably injured or altogether defeated, unless the injunction be granted as prayed.   *Binney's Case,* 2 *Bland,* 104.

The remaining property referred to in the bill, is that which she acquired from the estate of her father in 1852. In this he retains all marital rights by the law, as it existed prior to the adoption of the Code of 1860.   By virtue of these rights, the rents and profits of the lands inherited by his wife and referred to in these proceedings, were his property, 2 *Kent,* 129, *et seq.,* and the personal property vested in him absolutely.   *Peacock vs. Pembroke and Clarke,* 4 *Md.,* 280.

As to this property the injunction asked for, is ancillary to the main purpose of the bill; that being, to secure a separate maintenance for the wife, out of its rents and profits.   If that purpose be of such a character as to be beyond the equitable jurisdiction of the Court, the injunction obviously must not be allowed.   *Spear vs. Orendorf,* 26 *Md.,* 43.

It is not alleged that the appellant was compelled, by the misconduct and cruelty of the husband to separate from him, and in the case of *Helms vs. Franciscus,* 2 *Bland,* 568, the Chancellor, in determining the authority of the Court under the Act of 1777, ch. 12, (codified in Article 16, sec. 14,) has said, "it (the Court) cannot allow itself to receive any matter as a sufficient ground for

granting alimony alone, which would not be a sufficient foundation in England for granting a divorce *a mensa et thoro,* together with its incident alimony.   *   *   *   In all such cases the wife must show either that her husband has been guilty of adultery or cruel treatment.'' *Jamison vs. Jamison,* 4 *Md. Ch. Dec.,* 294. Nor is the husband asking the intervention of a Court of equity to obtain possession of the wife's property; in such a case the Court might require him to do what is equitable by making a suitable provision out of it for her maintenance.   In fact, a Court of equity has no original inherent jurisdiction to grant the wife a separate maintenance.   In *Ball vs. Montgomery,* 2 *Ves.,* 195, the Lord Chancellor said: '' I take it to be established law that no Court has any original jurisdiction to give a wife a separate maintenance.   It is always as incidental to some other matter that she becomes entitled to a separate provision.   If she applies in this Court upon a *supplicavit,* for security of the peace against her husband, and it is necessary that she should live apart as incidental to that, the Chancellor will allow her separate maintenance.''     2 *Story Eq.,* sec. 1424; *Nicholls vs. Danvers,* 2 *Vernon,* 671; *Gilchrist vs. Cator,* 1 *De Gex & Smales,* 188.

In *Wiles vs. Wiles,* 3 *Md.,* 8, this Court in speaking of the wife's equity, and citing from 2 *Kent,* 141, says: ''It does not, according to the adjudged cases, attach, except upon that part of her personal property in action, which the husband cannot acquire without the assistance of a Court of equity;   *   *   if the husband can acquire possession without a suit in law or in equity, or by a suit at law without the aid of a Court of chancery, (except perhaps as to legacies and portions by will or inheritance,) the husband will not be disturbed in the exercise of the right.''

So in *Schindel vs. Schindel,* 12 *Md.,* 294:   ''None of the property involved in this controversy is of an equit-

able character. The husband is not asking the intervention of a Court of equity for the purpose of obtaining the possession; in such a case it would be in the power of a Court having jurisdiction of the property to compel him to do equity by making a suitable provision out of it for her maintenance. Here the estate is legal; it is all in the absolute possession of the husband by virtue of the marriage, and in such case a Court of equity has no jurisdiction or power to disturb him in the exercise of his legal rights, or to decree any equitable settlement for the wife out of the property." *Hall vs. Hall*, 4 *Md. Ch. Dec.*, 283; *Mann's Ex'r vs. Higgins & Miller*, 7 *Gill*, 266.

The decree must therefore be affirmed.

*Decree affirmed.*

(Decided 15th March, 1893.)