PETER F. CONROY *v.* SOUTHERN MARYLAND AGRICULTURAL ASSOCIATION ET AL.

[No. 55, October Term, 1933.]

*Decided January 9th, 1934.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Isaac Lobe Straus,* with whom was *Wm. Purnell Hall* on the brief, for the appellant.

*Vernon Cook,* for Matilda A. Bryan, appellee.

*M. Hampton Magruder* and *William L. Rawls,* submitting on brief, for the Southern Maryland Agricultural Association and others, appellees.

Offutt, J., delivered the opinion of the Court.

On October 19th, 1931, Joseph A. Farrell and John Farrell, Jr., filed in the Circuit Court of Baltimore City their bill of complaint against the Southern Maryland Agricultural Association, its officers and directors, in which they prayed the court: (1) To compel the defendants to call in and cancel certain shares of the capital stock of the association held by Matilda A. Bryan, James F. O'Hara, Sarah E. O'Hara, and James F. O'Hara, Jr.; (2) to compel the corporate defendant to cancel and declare invalid a meeting of its stockholders held on January 12th, 1931, to amend its by-laws; (3a) to restrain the defendant directors from "any further activities" pending the suit; (3b) to restrain "all officers or employees" of the association, appointed or employed at the meeting of January 12th, 1931, or at its annual stockholders' meeting held on May 6th, 1931, or subsequently, from any corporate activity pending the suit.

The material facts alleged in the bill as a basis for that relief were that in 1920 the corporate defendant had increased its capital stock from $10,000, divided into 200 shares having a par value of $50, to $600,000, divided into 12,000 shares having a par value of $50, and had without the requisite authority illegally issued 5,800 shares of its new capital stock to James F. O'Hara and G. D. Bryan; that Matilda Bryan, widow of G. D. Bryan, and James F. O'Hara, Sarah E. O'Hara, and James F. O'Hara, Jr., son

of James F. O'Hara, since deceased, of whom Sarah E. O'Hara and James F. O'Hara, Jr., are the present owners of that stock, were illegally permitted to vote it at the stockholders' meetings of January 12th and May 6th, 1931; that at the meeting of January 12th the by-laws of the association were amended, and at the meeting of May 6th, 1931, its directors were elected, and that those corporate actions were accomplished only because the holders of the 5,800 shares of stock were permitted to vote it at those meetings.

It was further alleged that, when the increase in the capital stock of the company was authorized, the stockholders of the association also, by resolution, approved the action of its board of directors in offering the new stock to persons who had paid for certain improvements at ten dollars per share, and that, pursuant to the authority conferred by that resolution, 5,800 shares of stock were sold to O'Hara and Bryan, and that at the same time a stock dividend of one hundred per cent. and a cash dividend of five dollars per share were declared. The precise ground upon which the plaintiffs in that bill appear to have relied in support of their contention that the 5,800 shares of stock were illegally issued was that the purchasers did not pay the purchase price therefor before it was issued to them, and had not, in fact, ever paid for it. To that bill the defendants demurred on the ground that Mrs. Bryan and the O'Haras, who owned the 5,800 shares of stock, had not been joined as defendants. That demurrer was sustained, with leave to the plaintiffs to amend their bill, and they accordingly on January 19th, 1932, filed their amended bill against the association, its directors, Matilda A. Bryan, Sarah E. O'Hara, and James F. O'Hara, Jr. In substance, the amended bill, after stating the circumstances under which the stock was issued to O'Hara and Bryan, alleged that Bryan had given his stock to Matilda A. Bryan, and that O'Hara had given his to Sarah E. O'Hara and James F. O'Hara, Jr., and that since said gifts both O'Hara and Bryan had died; that neither the original purchasers nor the present holders had ever paid for the stock, although through it they were enabled to control the corpora-

tion, and because of that control the corporation had failed to take any steps to collect the unpaid purchase price. Upon these facts they asked the following relief:

"(1) That the defendants, Tillie Bryan (Matilda A. Bryan), Sarah E. O'Hara and James F. O'Hara, Jr., may be required by decree of this court to make payment for said 5,800 shares of said stock at the rate of $10.00 with interest from the date of issuance thereof, by a day to be fixed in said order, or the said stock may be thereupon cancelled and they be compelled to deliver the certificates therefor to said corporation, for such cancellation.

"(2) That the writ of injunction may issue from this honorable court restraining in the meantime the said Tillie Bryan (Matilda A. Bryan), Sarah E. O'Hara and James F. O'Hara, Jr., from voting said stock at any meetings of the stockholders thereof, or in any way acting as true and *bona fide* holders of the shares of said stock, and restraining the said Southern Maryland Agricultural Association, defendant, its officers and agents, from transferring said stock or from permitting the same to be voted at any stockholders' meeting of said corporation.

"(3) That in the event payment of said stock with interest as aforesaid to the said corporation be made, all expenses of the complainants herein be paid and discharged by said defendant corporation."

The association and its directors on March 7th, 1932, filed an answer to that bill in which, in substance, they set up two defenses: (1) That the plaintiffs were estopped to deny the legality of the transaction by which 5,800 shares of the capital stock of the association were sold to O'Hara and Bryan; and (2) that the stock was paid for by advances made to the association by O'Hara and Bryan before it was issued to them. The answer of Matilda A. Bryan, filed March 15th, 1932, and the answer of Sarah E. O'Hara and James F. O'Hara, Jr., filed on March 29th, 1932, in addition to those defenses, set up limitations as a defense against any claim that the association might have, and laches as a defense against the plaintiffs' claim.

On August 8th, 1932, after the case was at issue upon those pleadings, Peter F. Conroy, alleging that he was a stockholder of the association, filed a petition praying leave to intervene in the suit, and by an *ex parte* order passed on the same day was permitted to intervene and made a party plaintiff.

On October 28th, 1932, he filed a petition in the case in which he alleged that the entire transaction through which 5,800 shares of stock were issued to O'Hara and Bryan was illegal and void, and further alleged that he (Conroy), at the time when the capital stock of the association was increased, held forty-six shares of the two hundred shares of its original capital stock, that being the total issue then authorized, and that by virtue of such ownership he had a preferential right to subscribe to 46/200 of the new stock, but that, in violation of such right, only five hundred and ninety-eight shares of the new stock were issued to him; and that the purchasers thereof had not paid for the 5,800 shares of stock issued to them. He further alleged:

"That following said incorporation of said defendant corporation, and continuing until and upon said 17th day of November, 1920, the remaining 154 shares of the 200 shares of capital stock then authorized and recorded as outstanding, were held by the following persons in the following amounts, namely: James F. O'Hara, 47 shares and John Farrell, Jr., 47 shares; and were recorded to be held as follows: W. Hampton Magruder, defendant herein, 3 shares; Dr. Nelson Ryan, 3 shares; Horace Crosier, 3 shares; George S. Dove, 3 shares; John F. Fisher, 3 shares; Francis F. Carmody, 3 shares; R. Lee Mullikin, 3 shares; W. Bladen Jackson, 3 shares; W. Booth Bowie, 3 shares; J. Charles Sheriff, 3 shares; C. A. M. Wells, 3 shares; Richard J. Swaron, 3 shares; J. Enos Ray, Jr., 3 shares; T. Howard Duckett, 3 shares; Jas. B. Belt, 3 shares; Theo. W. Magruder, 3 shares; Claude H. Owens, 3 shares; William G. Brooks, 3 shares; Robert L. Hall, 3 shares; James B. Berry, 3 shares.

"Your petitioner believes that the said James F. O'Hara and John Farrell, Jr., actually owned the shares so as

500

aforesaid held by them respectively, but alleges that the other persons last above named as recorded or alleged holders of shares of stock of said corporation were not the owners of the shares of stock issued to them, and have never, in any manner whatever susbcribed or paid for, or owned, any of the stock of said corporation, the only owners of the stock of said corporation on said 17th of November, 1920, being your petitioner as aforesaid, James F. O'Hara and John Farrell, Jr."

Upon that petition he prayed: (1) That the "resolution and action" of the directors and stockholders of the association at the meeting of November 17th, 1920, which authorized "said 11,800 shares of increased stock to be offered for sale" at $10 per share to the persons who had "financed the improvements and expenditures," be declared void; (2) "that the resolution and action of the executive committee of the said defendant corporation, at its meeting on December 31st, 1920, in presenting and attempting to accept and effectuate the offer of said James F. O'Hara and G. D. Bryan, to take said 11,800 shares of stock at $10.00 per share, as hereinabove set forth; and also its action in declaring said stock dividend of 100% in the manner, and with the intention, upon the basis and with the effect, hereinabove particularly set forth, and also its action in declaring said cash dividend of $5.00 per share in the manner and with the intention and upon the basis and with the effect hereinabove particularly set forth, be, all and singular, declared illegal, null and void"; (3) that "all issues of said 11,800 shares of stock" to the said G. D. Bryan, and all issues of "said shares of stock" which he "attempted to give or transfer" to the defendant Tillie Bryan "be declared illegal, null and void"; (4) that all issues of said increase of "11,800 shares of stock" to James F. O'Hara, and all issues of said stock which the said O'Hara "attempted" to give or transfer to Sarah E. O'Hara and James F. O'Hara, Jr., be declared void; (5) and (6) that Mrs. Bryan and the O'Haras, respectively, be required to account for all dividends received by them upon said stock; (7) that the shares of stock issued to the individ-

ual defendants named as directors of the association be declared null and void; (8) that petitioner be allowed his "legal right" to subscribe to 46/200 of the issue of 11,800 shares of the new stock. The petitioner then "in the alternative" prayed: (9) "That the defendants Tillie Bryan, Sarah E. O'Hara and James F. O'Hara, Jr., may be required by decree of this court to make payment for said 11,800 shares of said stock at the rate of $10 with interest from the date of issuance thereof, by a day to be fixed in said order, or the said stock may be thereupon cancelled and they be compelled to deliver the certificates therefor to said corporation for such cancellation"; (10) that Mrs. Bryan and the O'Haras be enjoined from voting said stock or acting as the *bona fide* holders thereof, and enjoining the association from transferring said stock or permitting the same to be voted at any stockholders' meeting; (11) that, in the event that payment be made for the stock with interest, the expenses of the petitioner be paid; and (12) for general relief.

Upon that petition a show cause order was passed, and on November 15th, 1932, the association and its directors, Mrs. Bryan and the O'Haras, by way of cause, severally filed petitions identical in form, in which they suggested that Conroy's petition be dismissed and stricken from the files, and the order thereon be rescinded, on the grounds (1) that Conroy had been guilty of "unreasonable delay and laches in filing his petition, and (2) that the petition makes allegations entirely foreign to the subject-matter of the original bill and inconsistent with the allegations of the original bill and asks relief entirely different from that asked in the original bill and is not germane to the subject-matter of the original bill, and if treated as a part of the original bill would make the same multifarious."

Upon these several petitions the court on April 1st, 1933, passed this order: "That the motions of Matilda A. Bryan and others to rescind the order of October 28, 1932, which latter order was passed on the petition of Peter F. Conroy filed on or about that date are hereby sustained and granted, and the petition of Peter F. Conroy filed on or about October

28, 1932, is hereby dismissed and the order of October 28, 1932, passed on said petition is hereby rescinded, all without prejudice to the right of Peter F. Conroy to file such independent proceedings separate and apart from the present cause as he may deem proper. And with leave to him to move within thirty days to rescind the order of Aug. 8, 1932, making him a party to this cause so that if advised he may file such independent proceeding." From that order Conroy appealed.

The effect of the order was not, necessarily, to dismiss Conroy as a party to the suit, although it reserved to him the privilege of moving for a rescission of the order making him a party, if he deemed such action appropriate to his seeking relief in an independent action. Nor did it prevent him from litigating in this proceeding any issue made by the pleadings as he found them when he was made a party.

If his petition introduced no issues in the case other than those already made when he became a party, he was not injured by its dismissal, for in that case it was no more than a restatement of existing issues. If, on the other hand, his petition did raise additional issues different from those made by the pleadings as he found them when he came into the case, then in dismissing it the court acted within the proper limits of a sound discretion. 47 *C. J.* 103, 116.

There may be cases in which an intervener may be entitled as a matter of right to assert in a proceeding in which he has been allowed to intervene claims adverse to those of any or all of the original parties, even though the exercise of the right involves the introduction of additional issues, where that is necessary to protect his interests which will be concluded by the ultimate decision, and where such issues are consistent with and incidental to the objects and purposes of the suit *ibidem,* but this is not such a case.

While the authorities are not in accord as to the right of one interested in the subject-matter of an equity proceeding to intervene therein, the rule in this state, and one generally recognized elsewhere, is that the right to so intervene is not, unless the proceeding is *in rem* and the ultimate decree will

503

finally determine some interest, claim, or property right of the petitioner, absolute, but rests in the sound discretion of the court. *Stirn v. Radio-Keith-Orpheum Corp.*, 163 Md. 398, 163 A. 696, 697; *Miller's Equity Proc.*, secs. 77-81; *Credits Commutation Co. v. United States*, 177 U. S. 315, 20 S. Ct. 636, 44 L. Ed. 782 (cited with approval in *Stirn v. Radio-Keith-Orpheum Corp., supra*); *Alexander v. Md. Trust Company*, 106 Md. 189, 66 A. 836; 18 *Rose's Notes on U. S. Rep.* 499-500; note, 123 *Am. St. Rep.* 280. And in the note in the report last cited the annotator points out that intervention has no historical support, but rests upon statute, that it was borrowed from the civil law, and, while employed to some extent in the English ecclesiastical courts, it was unknown to the common law as well as to equity practice. 29 *R. C. L.* 683. But in modern practice, irrespective of statutory authority, it is undoubtedly the law that courts may in their sound discretion permit intervention in some cases and in others must permit it. *Miller's Equity Proc.*, page 101: "As in *Leonard v. Groome*, 47 Md. 499, 504 (subsequent incumbrancer); *Holthaus v. Nicholas*, 41 Md. 241, 266-267 (purchaser at trustee's sale); *Parr v. State*, 71 Md. 220, 236, 17 A. 1020 (sureties in a suit against the principal); *Prince George's County Commrs. v. Clarke*, 36 Md. 206, 219, and *Hebb v. Moore*, 66 Md. 167, 169, 7 A. 255 (tax collector); *Ortwine v. Caskey*, 43 Md. 134, 136 (purchaser of property sought to be charged with a mechanics' lien); see, also, *Brumbaugh v. State*, 54 Md. 641, 647 (lienors in sale of land by trustee)." *Id.*, note 3.

But while much of the argument of counsel in this court dealt with the right of the appellant to intervene, the question submitted by the appeal is not so much whether he had the right to intervene, for he was permitted to do that, and is still a party plaintiff, but whether, having been permitted to intervene, he was entitled as of right to introduce and litigate in it issues different from those made by the pleadings as he found them when he came into the case. Appellant contends that his petition introduced no new or different issues, and says that "somewhat more fully than the amended

bill, and not quite as fully as the original bill, it sets forth the various acts and proceedings, which are alleged to be illegal, pursuant to and by virtue of which the 5,800 shares of stock, and the stock dividend of one hundred per cent. thereon are charged to be unlawful and invalid, to the same effect as in the original and amended bills," but states that it added "another reason" for the invalidity of the stock, that the right of existing stockholders to "preferential subscriptions" was denied. That argument rests upon the assumption that the original and the amended bill together constitute a single pleading. The general rule is that an amended and an original bill constitute a single pleading (*Miller's Equity Proc.*, sec. 188), and, while there are statements that, where the amended bill is complete in all its parts, and is clearly intended to take the place of the original bill, it will be taken as substitute for it, and the case will proceed as though it were the only pleading of the plaintiff before the court (*Wagoner v. Wagoner*, 77 Md. 193, 26 A. 284, 285; 21 C. J. 532; *Carter v. First Nat. Bank*, 128 Md. 585, 98 A. 77; *England v. Gardiner*, 154 Md. 513, 142 A. 625, 626), it is not clear that they were intended to go to the extent of holding that the allegations and prayers of an original bill consistent with and supplementary to the allegations and prayers of such an amended bill are wholly out of the case. The case of *Wagoner v. Wagoner, supra*, comes nearest to that conclusion when it states: "The amendment to the bill in this case was made, not by filing a paper containing only such averments as were amendatory, but by an entirely new bill, complete in all its parts, containing substantially the same averments and praying for the same relief as the original bill. It was clearly intended by the complainant and understood by the court as a substitute for the original complaint. * * * Even if it could be considered that the amended bill was not the entire complaint of the appellant, and could be taken as only an amendment, which, together with the original bill, formed the basis of her action, yet, inasmuch as the court by its final decree dismissed the bill, it cannot be contended that the injunction first granted still con-

tinues." But it follows that statement with the comment that "amendments to a bill are always considered as forming a part of the original bill." And in *England v. Gardiner, supra,* there is this statement: "The amended bill in this case contained only amendatory averments and was not filed in substitution for the original bill. It was not the intention of the plaintiff to abandon his original bill, but that the case should be heard upon the original bill as amended. This is shown by the prayer of the amended bill by which the defendant was asked, not only to answer its allegations, but also the matters charged in the original bill." Without attempting to reconcile any apparent conflict in those statements, it may at least be said that they do establish the rule that, where an amended bill is complete in all its parts, and is plainly intended as a substitute for the original bill, and is so accepted by the parties, it will be taken as the only bill before the court, and the case will proceed upon its allegations alone as though there were no other bill in the case.

In this case it seems clear from the frame and tenor both of the amended bill and of the answers thereto that the amended bill was intended to take the place of the original bill, that the plaintiffs relied solely upon it as the only statement of their complaint in the case, and that the defendants accepted it as such. (1) It was filed as a bill complete in itself rather than as an amendment to the original bill. It is said in *Beach on Equity Practice,* sec. 153: "Amendments are either made by interlineations or by insertions in the margin, if short, or by being separately engrossed and annexed to the original bill. If they are of such a nature as to require the original bill to be re-engrossed, they must then be designated in some way sufficient to point them out to the defendant." In *Alexander's Chancery Practice,* 110, it is said: "The practice in regard to the form of making amendments, seems to have been unsettled. The most professional form is, to file a bill, which recites the substance of the original bill, and of the other proceedings necessary as an introduction to the subject of the amendment. The amendment

is then stated at large, and the prayer is, that the defendant may answer the amendment; or, if the original bill remains unanswered, the prayer is, that the defendant shall answer the original and amended bills." In *Walsh v. Smyth,* 3 Bland, 21, Chancellor Bland said: "Hence it is evident, that whatever may be the nature of the amendment, it should be so perspicuously and distinctly introduced and placed upon the record as to afford the means of readily, and at once distinguishing the original bill from each one of the amendments to it, and also of ascertaining the day when each one of the amendments was put upon the record." See, also, *Fletcher Equity Pl. & Pr.,* sec. 406. It is also apparent from these statements that the amended bill complied in no particular with the requirements of sound equity practice regulating amendments to a bill of complaint. But no objection was made below to the form in which the amendment was made, and the amended bill will therefore be accepted here for what it purports to be, a separate and independent pleading complete in itself. (2) There was no prayer in the amended bill that the new defendants answer the original bill, but it prayed that they answer the "premises," that is, the amended bill, which did not even refer to the original bill. (3) Neither the original nor the new defendants answered the original bill, nor did they refer to it in their answer to the amended bill, although the demurrer to the original bill was not for a general want of equity, but for failure to join necessary parties defendant.

The amended bill, apart from the introduction of new parties, differed from the original bill mainly in this, that, whereas the purpose and object of the original bill was the cancellation of the stock issued to O'Hara and Bryan, the object of the amended bill was to compel the holders of that stock to pay for it. But while the relief sought in the original and the amended bill differed in form, in each case the demand rested upon the same facts, and, except that these facts were described in greater detail in the original than in the amended bill, the allegations of both were in substance the same. The original bill did, it is true, intimate rather

than charge that the executive committee of the association, which on its behalf accepted the offer of O'Hara and Bryan for the stock, was not legally constituted, but little reliance was placed upon that objection, no facts supporting the intimation were alleged, and it was omitted from the amended bill. But the real basis for the relief sought in both bills was that the stock had been issued before it had been paid for, and that neither the original purchasers nor the subsequent holders ever had paid for it. In the original bill that was assumed to be sufficient ground for a cancellation of the stock, but in the amended bill the relief prayed assumed that the stock had been validly issued, and the plaintiffs sought only to compel the holders thereof to pay the subscription price therefor. In other words the purpose of the amended bill was to compel the association to collect a debt.

With the pleadings in that state the appellant in this case filed his petition, in which he asked: (1) That the act of the association done in 1920, nearly twelve years before the petition was filed, in offering the 11,800 shares of new stock at ten dollars per share to persons who "had financed the improvements and expenditures," be declared illegal, and that all stock issued in accordance with that offer be declared null and void. In that demand he departed completely from the demand of the original plaintiffs, which, conceding that the stock issued to the O'Haras and Bryan had been validly issued, was that the holders thereof pay the association the amount due it on account of the purchase price of the stock. (2) That certain stock and cash dividends declared in 1920 be nullified and set aside. In that demand appellant added a new issue wholly foreign either to the orgiinal or the amended bill, in neither of which did the original plaintiffs attack those corporate acts. (3) That he (Conroy), as the holder of forty-six of the authorized issue of 200 shares of the original capital stock of the association, be awarded a preferential right to subscribe to 46/200 of the 11,800 shares of the new capital stock. That demand introduced a new issue in the case not connected in any way with anything contained in either the original or the amended bill, and

508

wholly foreign to the objects and purposes of either. (4) That three shares of stock issued each to M. Hampton Magruder and twenty other persons, directors of the association, be annulled and set aside. That demand was also wholly foreign to any allegation, prayer, or purpose of either the original or the amended bill. In so far as they are enforceable, these demands may properly be asserted by the appellant in an independent proceeding or proceedings, but he is not entitled as a matter of right to litigate them in a proceeding brought by others for a purpose with which they are in no way connected. If he elects to remain in this case as a party plaintiff, it may be that he would be estopped from hereafter asserting that the 5,800 shares of stock were not legally issued, or that the holders thereof never acquired any valid title to them, for if they are, or have been, indebted to the association for the stock which they hold, it must be true that the stock was legally issued, because they could not be compelled to pay for what is in fact a nullity.

But appellant has been given the right to elect whether he will remain in the case. If he is discharged from it as a party, no decree in it, on the issues as now made up, can prevent him from asserting in an independent proceeding that the stock held by any of the defendants was illegally issued and should be canceled, or any other demand or claim embraced in the four categories described above, because the parties in this case cannot deprive him of any right which he may have by any concession or admission that they may make between themselves, unless he remains in it as a party, nor could any decree resting upon such admissions or concessions have that effect. It is true that appellant, in his petition, as an alternative prays the same relief as that sought in the amended bill, but, as the order appealed from reserves to him the right to elect whether he will remain in the case to prosecute a claim to that relief, it did not finally adjudicate his rights in respect to it, but left them to be determined by final decree upon the present pleadings.

In *Stirn v. Radio-Keith-Orpheum Corp.,* 163 Md. 398, 163 A. 696, 697, the appellant filed a petition to intervene

in a stockholders' suit. The application was denied, but "without prejudice to any rights the petitioner may have to bring an independent suit at law or in equity." Referring to that action, Judge Urner for this court said: "In declining to admit the appellant as a party at the time and for the purpose shown by the record, the court below acted in the exercise of a competent and sound discretion. Its order denying the appellant's request to be made a party did not adjudicate any of his rights, but expressly left him free to bring an independent suit. Because of its discretionary nature and its lack of finality, the order was, in a double aspect, not appealable." In that case the "discretion" referred to was in denying to the petitioner the right to intervene at all. In this, the court, in dismissing the appellant's petition, permitted him to intervene for one purpose, but denied him the right to litigate in it issues not germane to that purpose. If the action of the court in the case last cited was done in the "exercise of a competent and sound discretion," it might be urged that its action in this was equally within the limits of such a discretion. But by admitting appellant as a party plaintiff, the court necessarily clothed him with all the privileges of any other party to the cause, including the right of presenting, in an orderly and proper manner, by appropriate pleadings, facts upon which he relied in support of his claim in so far as the same were relevant to the issues in the case. Whether such a pleading was good or bad lay not in the discretion of the court, but in its averments, and the determination of that question depended upon the law applicable to them, as in the case of any pleading offered by any other party to the cause, and there is no sound reason why it should not be reviewed.

But while the appeal will not be dismissed on the ground that the order was passed in the exercise of an irreviewable discretion, it must be dismissed on the second ground stated in *Slirn v. Radio-Keith-Orpheum Corp., supra.* It lacked finality. It determined no right or claim of the appellant not actually in issue under the pleadings in this case, but reserved to him the right to assert any such right or claim

in an independent proceeding, nor did it adjudicate any right or claim of his which is in issue under such pleadings, but it left the determination of such issues for final decree and reserved to him the right, at his election, of remaining in the case to assert and protect whatever rights he may have in so far as the same are consistent with issues made by the pleadings therein. The appeal will therefore be dismissed, with costs to the appellee.

*Appeal dismissed, with costs.*