478

DEPARTMENT OF ASSESSMENTS OF BALTI-
MORE CITY ᴇᴛ ᴀʟ. *v.* ST. MARY'S ROLAND
VIEW TOWERS, INC.

(Two Appeals in One Record)

[No. 494, September Term, 1965.]

*Decided November 17, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Nelson B. Seidman, Assistant City Solicitor of Baltimore,* and *Ambrose T. Hartman, Deputy City Solicitor,* with whom were *Thomas B. Finan, Attorney General, Jon F. Oster, Assistant Attorney General, Joseph Allen, City Solicitor,* and *Kenneth D. Pezzulla, Assistant City Solicitor,* on the brief, for the Department of Assessments, one of the appellants.

*Bernard M. Savage* for the interveners, the other appellants.

*Charles C. W. Atwater,* with whom were *Mylander & Atwater* on the brief, for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

St. Mary's Roland View Towers, Inc. (St. Mary's) was organized by the St. Mary's Protestant Episcopal Church (the Church) in 1962 as a non-profit corporation for the purpose of building a housing project for the elderly utilizing funds to be borrowed from the Federal government under Section 202 of the National Housing Act of 1959 (12 U.S.C.A. § 1701q). Land adjacent to and owned by the Church was conveyed to St. Mary's in 1963, and the construction of a fifteen-story "highrise" apartment building thereon was completed in 1964; the building contains 149 apartments, a restaurant, drug store and beauty shop.

The corporate purposes of St. Mary's as set forth in its charter provide that the property shall be operated to furnish housing and related facilities and services on a non-profit basis to elderly persons who lack adequate financial means to provide these facilities themselves without distress. Members of the Board of Trustees serve without compensation, and in the event of dissolution, all amounts must be distributed to a non-profit charitable corporation to be designated.

The United States Housing and Home Finance Administration, under the National Housing Act, provided all of the funds required for construction of the apartment building, except for an equity contribution of approximately $40,000 by the Church. Pursuant to the regulatory agreement with the Federal government, the rents are established at such levels as will permit the apartment house to be operated on a cost basis so as to meet all its cash flow requirements, including mortgage amortization. The Federal loan is repayable over fifty years at an interest rate of 3 ½%.

All tenants must be at least 62 years of age, with annual incomes not in excess of $4,050 for single applicants, $4,800 for a husband and wife, and $6,000 for two unrelated applicants. Rents range from $75 to $140 per month. Some tenants receive assistance in paying their rent from a special fund. Federal regulations impose no limit upon the amount of non-income producing property which a tenant may own.

The Internal Revenue Service has ruled that St. Mary's is exempt from Federal income tax as a charitable corporation under Section 501 (c) (3) of the Internal Revenue Code of 1954.

Facilities in the building include a restaurant which is operated on a concession basis, a service facility operated by a nearby druggist to provide medical supplies for the tenants, a beauty shop, and coin-operated laundry facilities.

On August 21, 1963, the Department of Assessments of Baltimore City (the Department) levied a 1964 real property assessment of $30,000 on St. Mary's lot. On appeal by St. Mary's to the Board of Municipal and Zoning Appeals (the Board), the decision of the Department was reversed, on the basis that "the property owner continued to be a charitable corporation in 1964", and an exemption from taxation was granted for 1964.

St. Mary's thereafter erected its "high-rise" apartment building on the lot. On December 7, 1964, the Department levied a final real property assessment for 1965 of $960,000 on the improvements. On appeal by St. Mary's, the Board on February 18, 1965 again reversed the decision of the Department and granted a statutory exemption under Code (1957 Ed., 1965 Supp.), Article 81, Section 9, Subsection 7.

The Department appealed both rulings of the Board to the Maryland Tax Court. On June 15, 1965, the Tax Court affirmed the action of the Board in exempting the land and building from taxation, on the ground that St. Mary's is a charitable corporation.

The Department appealed the decisions of the Maryland Tax Court to the Baltimore City Court. In that court, the corporate owners of various apartment buildings on which they pay real estate taxes (the interveners) were granted leave to intervene as parties plaintiff.

The facts above set forth were stipulated. The interveners adduced uncontested evidence at the hearing in the Baltimore City Court that the tax exemptions would enable St. Mary's to rent apartments for less than comparable apartments owned by the interveners and that the high-rise apartment market in the Baltimore area is highly competitive, with a present vacancy ratio of approximately from 10% to 24% in St. Mary's price ranges.

Judge Cullen filed an opinion on November 15, 1965 in which he held that St. Mary's is a non-profit charitable corporation within the meaning of Article 81, Section 9 of the Code, and that it is not "commercially rented." The Department and the interveners appealed.

After the filing of the appeals in this Court, the Legislature enacted Chapter 201 of the Laws of Maryland, 1966 Regular Session, (the Act) which enacted a new sub-section 7 (a) as an amendment to Code, Article 81, Section 9. The preamble to the Act sets forth figures as to the number and economic plight of elderly citizens in the lower middle income bracket living in their own homes; recites the need for non-profit rental housing financed by loans under the National Housing Act of 1959; designates the creation of such housing a public purpose; and states that the provisions of the Act are necessary and advisable in the effectuation of that purpose. The Act authorizes the political subdivisions of the State of Maryland to enter into agreements providing for a payment in lieu of real property taxes on property utilized for the housing of elderly and handicapped persons on a non-profit basis under Section 202 of the National Housing Act of 1959, as amended.

Pursuant to the Act, the Mayor and City Council of Baltimore entered into an agreement with St. Mary's dated August 22, 1966 (the Agreement), which provides for payment to the City of Baltimore by St. Mary's of a fixed, determined amount each year in lieu of all real property taxes, both City and State, for the years at issue in this appeal and for future years. A condition of the Agreement is that a joint petition be filed for the dismissal of the pending appeals because the question involved has become moot, and that the proceeding be dismissed by order of this Court.

Pursuant to the Agreement, the Department and St. Mary's filed a joint motion to dismiss the appeals, pursuant to Maryland Rule 835 (b) (7), on the ground that the appeals have become moot. The motion referred to the Act and attached a copy of the Agreement as an exhibit. The interveners answered the motion and prayed that it be denied, for reasons which will be stated hereafter. We reserved ruling on the motion until argument on the motion and the merits, which has been had. We have decided that the motion to dismiss should be granted,

and accordingly do not reach the questions raised by the appeals.

Baltimore City and St. Mary's, formerly antagonists in the litigation, have agreed that the assessments, the validity of which was the subject of the action, shall be abated by the payment of an agreed amount by St. Mary's in lieu of taxes. Under the Agreement, the question at issue in the appeals no longer exists. The Act under which the Agreement was made was passed subsequent to the appeals, but actions which render a case moot usually occur after an appeal is entered and can be shown dehors the record. *Lake Falls Ass'n v. Board of Zoning Appeals,* 209 Md. 561, 121 A. 2d 809 (1956). See also *Yorkdale Corp. v. Powell,* 237 Md. 121, 205 A. 2d 269 (1964) ; *Gorman v. St. Paul Fire Ins. Co.,* 210 Md. 1, 4, 121 A. 2d 812 (1956) and *Grau v. Board of Zoning Appeals,* 210 Md. 19, 23, 122 A. 2d 824 (1956).

*Lake Falls* is closely in point. There, the Board of Zoning Appeals of Baltimore County had rezoned certain property from A residential to E Commercial. Opponents of the rezoning instituted suit in the Circuit Court for Baltimore County, which affirmed the Board's action. After an appeal from that order had been filed in this Court, the County Commissioners of Baltimore County, in new zoning regulations for the County, rezoned the property as Business Local, a more restricted commercial use than E Commercial. This Court granted the Board's motion to dismiss the appeal, on the ground that the controversy had become moot, saying, at 209 Md. 565, that "the zoning classification that was the subject of litigation was extinguished by repeal." *Banner v. Home Sales Co. D,* 201 Md. 425, 94 A. 2d 264 (1953), cited in *Lake Falls,* is to the same effect. In the case before us, it was not the subsequent legislative action itself which extinguished the subject of the litigation, but the Agreement made under the Act. The legal result is the same.

The interveners, in their answer to the motion to dismiss and in argument, contend that the question is not moot because the Agreement provides it shall not become legally effective and binding until the appeal is dismissed by order of this Court. It is customary for settlement agreements of pending litigation to provide that an order of "Agreed and Settled" shall be filed

before the settlement is binding. St. Mary's would not make a payment in lieu of real estate taxes if the judgment of the lower court were affirmed, and the Department would not accept a sum less than the full taxes if the judgment were reversed. The short answer to the interveners' contention is that we are dismissing the appeals and therefore the Agreement becomes legally binding.

The interveners contend that the Act is unconstitutional, on the grounds that it is retroactive in effect and that it constitutes an unlawful discrimination against apartment house owners which pay full taxes, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Again *Lake Falls* is in point. There, the appellants sought to challenge the validity of the new zoning classification. The Court pointed out, however, that such a course of action would amount to more than the raising of new issues of law after the appeal. "There would be new issues of fact * * * In short, it would amount to an original trial of a case in this Court." 209 Md. at 566. Maryland Rule 885 is applicable.

The interveners deny that the provisions of the Act are applicable to St. Mary's. That corporation, they contend, is not a qualified borrower from the United States under Section 202 of the National Housing Act of 1959, and does not qualify under the Act as a non-profit corporation with which a political sub-division can make an agreement in lieu of taxes. As is the case with the issue of constitutionality, the question is not properly before us. It can be raised only by new proceedings in which the issues of fact and law can be passed upon, in the first instance, by the lower court.

The final contention of the interveners to be considered is that the appeals can not properly be dismissed over their objection. They submit that, because of the order of the lower court permitting them to intervene as parties plaintiff and their appeal from the judgment below, the Agreement is not in full settlement of the rights of all the parties to the appeals. The answer to this contention is that the issue before the lower court is not involved in the Agreement under the Act. The interveners' motion for leave to intervene as parties plaintiff below, which was granted, was based on the allegations that, as apartment house owners, they would be adversely affected by a

decision granting St. Mary's exemption from real estate taxes as a charitable corporation, and that, if the exemption were granted, it would create a precedent for similar projects, with a resultant decrease in the value of the interveners' apartment buildings. The Act under which the Agreement was made, however, grants no exemption, but, for the reasons of public policy set forth in the preamble, authorizes agreements in lieu of taxes. Private parties, other than the non-profit corporations to which it applies, have no place in the operation of the Act.

It is true that a party who intervenes as a contestant in a proceeding is a party to the judgment. Restatement, *Judgments* § 79 f. But the order permitting the interveners to become parties plaintiff in the legal proceedings which resulted in the judgment appealed from did not operate to give them a legal status under the legislative enactment pursuant to which the Agreement was made.

Underlying all the arguments of the interveners that the appeals should not be dismissed is the mistaken assumption that, by reason of their permitted intervention, they have standing before this Court to raise new issues as to the validity and construction of the Act. But under the decisions and Rules of this Court, those issues can only be raised in new proceedings. Nothing in this decision precludes the interveners from bringing a new action under which the facts and legal principles as to these matters can be duly adjudicated. Nor does this decision adjudicate the only issue as to which the intervention was permitted: whether St. Mary's and other similar corporations are entitled, as a matter of law, to exemption from real estate taxation.

The basic reason why the interveners have no standing to contest the motion to dismiss the appeal is illustrated in *Conroy v. Southern Md. Agricultural Ass'n*, 165 Md. 494, 169 Atl. 802 (1934). There an intervener appealed an order rescinding a former order which allowed him to intervene in the suit. The Court dismissed his appeal on the ground that the appeal was premature since the order appealed from was not final. However, in the course of the opinion, the Court approved the action of the lower court in rescinding the order allowing intervention because the intervener sought to introduce new issues

into the case. Judge Offutt, for the Court, said, at 165 Md. 502, 507-08:

> "If his [the intervener's] petition introduced no issues in the case other than those already made when he became a party, he was not injured by its dismissal, for in that case it was no more than a restatement of existing issues. If, on the other hand, his petition did raise additional issues different from those made by the pleadings as he found them when he came into the case, then in dismissing it the court acted within the proper limits of a sound discretion. 47 C. J. 103, 116.
>
> \* \* \*
>
> "In [his] demand [the intervener] departed completely from the demand of the original plaintiffs, which, conceding that the stock issued to the O'Haras and Bryan had been validly issued, was that the holders thereof pay the association the amount due it on account of the purchase price of the stock \* \* \* That demand was also wholly foreign to any allegation, prayer, or purpose of either the original or the amended bill. In so far as they are enforceable, these demands may properly be asserted by the appellant in an independent proceeding or proceedings, but he is not entitled as a matter of right to litigate them in a proceeding brought by others for a purpose with which they are in no way connected."

> *Motion to dismiss appeals granted and appeals dismissed, with leave granted to the Department of Assessments of Baltimore City and St. Mary's Roland View Towers, Inc. to file in the Baltimore City Court in these proceedings an order entering the case "agreed and settled"; one-half of the costs to be paid by the Department, the other half by the interveners, 100 W. University Corp., et al.*